ORSON E. HORTON, as Administrator, etc., of HARRY WILLARD HORTON, Deceased, Respondent, v. THE CITY OF NEW YORK, Appellant.

First Department, June 12, 1925.

Negligence — action against city of New York to recover for death of plaintiff's intestate, employed as driver of milk wagon — when turning from one street into another, intestate drove wagon outside macadam and wheels dropped into open gutter — wagon turned over and intestate was killed — negligence cannot be predicated on manner of constructing street and adjoining gutter — intestate was guilty of contributory negligence as matter of law in driving outside beaten path.

The city of New York is not liable for the death of the plaintiff's intestate in an action predicated on the negligence of the city in the construction of a street and the gutters adjoining, where the plaintiff's intestate, who was a driver of a milk wagon, while driving from one street into another, left the traveled part of the highway and drove so close to the curb that the wheels of the wagon dropped into an open gutter which caused the wagon to turn over and resulted in the death of plaintiff's intestate, since it appears that the construction of the street and the gutters adjoining were similar to that of all other streets in the particular section and was not negligent in design, and that there was no claim that that portion of the street intended for vehicular traffic was in a defective condition.

The plaintiff's intestate was guilty of contributory negligence, as a matter of
law, in leaving the traveled portion of the street and driving so close to the
curb as to allow the wheels of his wagon to drop into the gutter.

APPEAL by the defendant, The City of New York, from a judg-
ment of the Supreme Court in favor of the plaintiff, entered in
the office of the clerk of the county of Bronx on the 17th day of
June, 1924, upon the verdict of a jury for $9,500, and also from
an order entered in said clerk's office on the same day, denying
defendant's motion for a new trial made upon the minutes.

*George P. Nicholson,* Corporation Counsel [*Willard S. Allen* of
counsel; *John F. O'Brien* and *Charles C. Marrin* with him on the
brief], for the appellant.

*Edward J. Conlon* [*Benjamin C. Loder* of counsel], for the
respondent.

McAVOY, J.:

The plaintiff administrator brought this action to recover damages
for the death of his intestate. A verdict was rendered by the jury
in favor of the plaintiff for the sum of $9,500.

There are two causes of action alleged in the complaint, the
first cause of action being in negligence and the second in nuisance.

In the first cause of action the plaintiff, among other things,
alleged " that on or about the 6th day of April, 1921, the plaintiff's
intestate, Harry Willard Horton, was lawfully and properly driving
a team of horses and wagon at or near the northeast corner of the
intersection of Carpenter Avenue and East 229th Street, in the
Borough of Bronx, City of New York. * * * That while the
plaintiff's intestate, Harry Willard Horton, was so driving his
team and wagon around the corner of the intersection of the
highways aforementioned, and without any fault or negligence
on his part contributing thereto, but solely because of the unsafe
and defective condition and construction of said highway in that
the culvert or sewer cover at such intersection was broken and in
a state of disrepair and solely by reason of the negligence of the
defendant in not repairing the same, the wagon in which the
plaintiff's intestate, Harry Willard Horton, was being driven as
aforesaid, was caused to turn over on its right side when the wheels
of said wagon were caused to drop suddenly into said defective
and disrepaired culvert, sewer or hole at said intersection afore-
mentioned, and this plaintiff's intestate, Harry Willard Horton,
was thrown from said wagon and received injuries from which he
died. That said injuries and death resulting therefrom were caused
solely by reason of the negligence and carelessness of the defendant

and that the plaintiff's intestate was free from contributory negligence."

In the second cause of action the plaintiff alleged " that the said defective and disrepaired culvert, sewer cover or hole in the highway at the northeast corner of said East 229th Street and Carpenter Avenue, in the Borough of Bronx, City of New York, was negligently, carelessly and recklessly caused, maintained and permitted to exist unlawfully and became and constituted a public nuisance, all of which was to the knowledge of the defendant or should have been known to it, and remedied a considerable length of time prior to the happening of this accident."

The defendant pleads as an affirmative defense contributory negligence on the part of plaintiff's intestate or that the acts or omissions of third persons over whom the defendant had no control caused the accident.

The proof shows that on April 6, 1921, about five o'clock in the morning, plaintiff's intestate, Harry Willard Horton, who was over eighteen years old, was driving a regular two-horse delivery milk wagon of the Sheffield Farms-Slawson Decker Company with two horses attached thereto, in a westerly direction on East Two Hundred and Twenty-ninth street. When he reached Carpenter avenue, he turned the team and wagon to the right to go north on Carpenter avenue and while he was turning the northeast corner of Carpenter avenue and East Two Hundred and Twenty-ninth street, the right rear wheel of his wagon went across the corner of the culvert and crushed the end of it down. The wagon slid and the right rear wheel dropped down into the open gutter along the easterly side of Carpenter avenue. The wagon turned over on its right side on the sidewalk and the plaintiff's intestate was thrown out under the wagon and was killed.

The street lights were being turned out at the time plaintiff's intestate started to drive down the hill on East Two Hundred and Twenty-ninth street to Carpenter avenue, and it was light enough to see.

Plaintiff's intestate had only been in the employ of the Sheffield Farms-Slawson Decker Company from eight to ten days before the happening of the accident, " breaking in " on that route, and during that time he had only delivered about four days. Before he was employed by the Sheffield Farms-Slawson Decker Company the plaintiff's intestate had been employed as an electrician.

Carpenter avenue runs north and south and is fifty feet in width. The roadway intended for travel was constructed of macadam and was twenty-five feet in width, and was in good condition at the time of the happening of the accident. The

roadway was considerably higher in the center and it sloped towards the east and towards the west. There was a gutter on both the east and west side of Carpenter avenue, and the macadam roadway extended down on each side to the edge of the gutters. These gutters were constructed of flat stones and were about two feet in width from the curb and in places the gutters were slightly depressed. The gutters in other streets in that section were the same as on Carpenter avenue.

On the easterly side of Carpenter avenue there was a sidewalk eleven feet in width. About three and one-half feet of this sidewalk was dirt and the balance was bluestone flags. There was a sign-post on the sidewalk of Carpenter avenue, between the flagstones and the curb, which was a little north of the northeast corner of Carpenter avenue and East Two Hundred and Twenty-ninth street, and that was uprooted by the wagon overturning against it.

East Two Hundred and Twenty-ninth street runs east and west and is fifty feet in width. The roadway intended for travel was dirt and was between twenty-four and twenty-five feet in width and was in good condition. There were stone gutters on each side between the stone curb and the dirt roadway, and there was a cinder sidewalk on both the north and south side of the street, which was eleven feet in width. There has been no change in the curb line for many years.

At the intersection of East Two Hundred and Twenty-ninth street with Carpenter avenue there was a culvert on the easterly side of Carpenter avenue, which went under the surface of the roadway and was on a line with the open gutter along that side of Carpenter avenue. That culvert was about a foot in width and the northerly end extended seven feet north of the intersection of the northerly curb line of East Two Hundred and Twenty-ninth street. At that point the culvert joined the open gutter running north. The gutter at that point was about a foot and a half to two feet lower than the culvert. That culvert also joined the open gutter at about the same distance south of the intersection of the southerly curb line of East Two Hundred and Twenty-ninth street. The general plan of construction was the same all along Carpenter avenue for its entire length.

On East Two Hundred and Twenty-ninth street there were two culverts. One of such culverts was on the south side of the roadway and the other on the north side. The culvert on the north side of East Two Hundred and Twenty-ninth street joined the open stone gutter on that side, about sixteen to twenty-five feet east of the easterly curb line of Carpenter avenue, and connected with the said culvert on Carpenter avenue. The culvert

on the north side of East Two Hundred and Twenty-ninth street was under the surface of that street and the crosswalk of Carpenter avenue. The stone curb and the open gutter on the north side of East Two Hundred and Twenty-ninth street stopped at the point where said culvert joined the gutter and there was no curb from there on to the easterly curb line of Carpenter avenue.

On April 6, 1921, the date of the accident, Carpenter avenue was sparsely settled. At that time there were no houses on either the northeast or the southeast corner of Carpenter avenue and East Two Hundred and Twenty-ninth street, or on the west side of Carpenter avenue for some distance either north or south of East Two Hundred and Twenty-ninth street. The method of construction of drains under the roadways at Carpenter avenue and East Two Hundred and Twenty-ninth street and the surrounding section was a method that was followed for many years. Likewise the type of construction of drains at the side of the road in the sections in that vicinity in Eastchester, Unionport, Westchester and Williamsbridge was laid out according to a recognized plan or system adopted by the borough authorities.

The case was submitted to the jury solely on the theory of negligence.

This recital shows that the plaintiff failed to prove any actionable negligence on the part of the defendant, and that a submission to the jury of the question of such negligence was error.

There was no contention made upon the trial that that portion of the highway of East Two Hundred and Twenty-ninth street or Carpenter avenue which was intended for vehicles was in a defective condition. Plaintiff's intestate permitted the team that he was driving to turn the northeast corner of Carpenter avenue and East Two Hundred and Twenty-ninth street in such a manner that the right rear wheel of the wagon left the beaten path, the path which was intended for vehicles, and it went upon and across the north end of the culvert, and into the open gutter along the easterly side of Carpenter avenue and his wagon was overturned. The sole negligence attributed to the defendant is that the north end of the culvert where it joins the open gutter was in a defective condition.

That portion of the culvert where the right rear wheel of the wagon went across and then dropped into the open gutter was seven feet north of the intersection of the northerly curb line of East Two Hundred and Twenty-ninth street, and neither that portion of the culvert nor the open gutter was in that part of the roadway of Carpenter avenue which was intended for travel, but was to the east of such roadway.

No one could reasonably anticipate that such an accident as befell the plaintiff's intestate was liable to happen, and there is no evidence that an accident of this kind had ever happened there before.

It is well settled that where the municipality maintains a sufficiently wide highway in good condition, it is not responsible for accidents caused by people leaving the traveled portion of the highway.

In *King* v. *Village of Fort Ann* (180 N. Y. 496) the plaintiff on a dark night while driving a team, consisting of two horses and a wagon, along a country road, or highway, the traveled portion of which was about eighteen feet wide and in good condition, drove off such portion across a six- or seven-foot grass plot and one of the fore wheels of the wagon dropped into a thirty-four-inch gutter, hole or ditch on the side of the road and the plaintiff was thrown out of the wagon and was injured. In the course of the opinion the Court of Appeals, in reversing the judgment in plaintiff's favor, said (at p. 501): " According to common experience no accident of the kind that befell the plaintiff was liable to happen, and the evidence showed that no accident of this character had ever happened there before. It is in general the duty of a traveler to remain in the traveled track of the road or that part of the highway which, to a reasonable width, has been graded or prepared for that purpose, and if he voluntarily deviates from the roadway thus prepared and meets with an accident from some cause outside of the traveled track the municipality ought not to be responsible for any damage or injury he may thus sustain. If the law were otherwise it would follow that a municipality would be liable for all accidents occurring in consequence of the voluntary act or mistake of a traveler in leaving the roadway to travel upon that part not intended for his use."

It seems, too, plaintiff's intestate was guilty of contributory negligence as a matter of law in driving as he did over a portion of the roadway, so close to the point where depressions for drains and gutters are ordinarily placed, and which common caution would indicate to a prudent man ought to be avoided.

We think the judgment and order should be reversed, with costs, and the complaint dismissed, with costs.

CLARKE, P. J., DOWLING, FINCH and MARTIN, JJ., concur.

Judgment and order reversed, with costs, and complaint dismissed, with costs.