EDWARD HAYTON, an Infant, by JOSEPH HAYTON, His Guardian ad Litem, and JOSEPH HAYTON, Respondents, *v.* MARY M. McLAUGHLIN (Sued Herein as MARY B. McLAUGHLIN), Appellant, Respondent, and THE CITY OF NEW YORK, Appellant.

Second Department, January 12, 1942.

*E. T. Costello*, for the appellant, respondent.

*Oren Clive Herwitz* [*William C. Chanler, Corporation Counsel, Paxton Blair* and *Milton I. Newman* with him on the brief], for the appellant The City of New York.

*Sidney J. Feltenstein* [*Moses Feltenstein* with him on the brief], for the respondents.

CARSWELL, J.   The defendant McLaughlin, on October 17, 1938, owned No. 712 Avenue O, Brooklyn, N. Y., a small dwelling house.   It had a courtyard in front thereof, inclosed on three sides with a wire fence eighteen inches high.   This courtyard was nineteen feet, eleven inches, deep, and fifteen feet, five inches, wide.   Of its depth eight feet extended beyond the legal building line, over and upon the sidewalk area.   The courtyard, however, did not extend beyond the actual sidewalk or street line of the adjacent houses.   There was a sidewalk space from the front fence to the curb of ten feet, six inches.   She acquired the property

two years before, in November, 1936, at which time the court-yard, as thus fenced, existed, it having been constructed by a predecessor in title in 1926.

The plaintiff boy, thirteen and one-half years old, called herein-after " plaintiff," lived next door, at No. 710 Avenue O, for about four months prior to October 17, 1938. On that day he and two other boys were engaged in playing " stoopball " in front of the plaintiff's house. The ball bounded into the courtyard of the McLaughlin house next door, and plaintiff proceeded to retrieve it. He stepped over the fence with one foot, reached for the ball and found it was just beyond his reach. While in the act of bring-ing his other foot over he tripped, fell and suffered injuries solely because he did not lift his foot high enough to clear the fence. On many prior occasions, he, without difficulty, stepped over the fence without tripping. He complains of the existence of the courtyard and fence, but not of the character or condition of the fence.

(A) The germane reciprocal rights and duties, where an article sought to be retrieved was put in motion by an act of nature (a gust of wind), are stated in a pertinent illustration, in exact accord with the actual decision in *Tymon* v. *M. L. S. Construction Co.* (262 N. Y. 161, 166). It was there said: " Under such circum-stances the loser would have the implied right or permission to go into the areaway [within street lines] to recover the lost article. The likelihood of such an occurrence would require mutual regard for the safety of one for the other. The person entering would be obliged to use care and caution, and the owner would be obliged to maintain the areaway free from hidden and known dangers."

Where an article was put in motion by human act or agency, the duty of the property owner is no greater and the corresponding duty of the entrant is no less than when an article was put in motion by an act of nature.

When plaintiff stepped over this fence, under the circumstances of this accident, he necessarily had the fence vividly in mind; at that moment and prior thereto he was aware of and alert to its presence. His close proximity and posture with reference to the fence were voluntary and knowing acts. His tripping, therefore, was due to his own negligence and a failure to act with ordinary care, judged by the standard erected by his own conduct on prior occasions, which standard is in harmony with common knowledge.

This view is not in conflict with *Feinman* v. *Rubenstein* (240 App. Div. 899; affd., 264 N. Y. 662), where liability was sustained by a divided court. A courtyard was not there involved. It was a grassplot between a concrete sidewalk and a curb in which there were a tree, two bushes and some grass. There was also imbedded in the ground a remnant, in the form of a short twelve-inch post or peg, of a previously existing low string and peg fence. A running tennis player tripped over this obstruction in seeking to recover a ball which had rolled some distance beyond but in line with this dangerous obstruction or post. Such a situation is in nowise similar to that herein.

The instant case is not one where, with knowledge of the existence of an obstruction or fence, a preoccupied person momentarily forgets it, and falls over it, or one where a pedestrian has been crowded over by another and inadvertently falls over or on the fence. Here we have an experienced, mature and agile boy voluntarily acting in an incident with the existence of the fence immediately in mind.

Plaintiff, accordingly, was guilty of contributory negligence as a matter of law.

This conclusion is fortified by another doctrine, recourse to which is not imperative. That principle is that where one deliberately leaves a street area, which the physical conditions reveal the public is invited to use or travel upon, and enters upon a part of such street area, which the physical conditions disclose the public is not invited to use or travel upon, he must take the conditions as they are, and a municipality may not be held responsible therefor. (*King* v. *Village of Fort Ann*, 180 N. Y. 496, 501; *Flansburg* v. *Town of Elbridge*, 205 id. 423, 430; *Horton* v. *City of New York*, 213 App. Div. 172.)

(B) It is urged that the existence of this fenced-in courtyard, partly on the public street or sidewalk, was not a nuisance as a matter of law. In considering this assertion it must be recognized that an inclosed courtyard is a customary and traditional street purpose or use. (*McCloskey* v. *Buckley*, 223 N. Y. 187, 192; *Tymon* v. *M. L. S. Construction Co.*, *supra; Linton* v. *Coupe*, 138 App. Div. 518, 522.)

To determine this contention requires recourse to cases, some of which are in seeming conflict. We have been told " No hard and fast rule can be formulated " as to when the question is one

of law or one of fact (*McCloskey* v. *Buckley, supra*), but as the pertinent cases do not defy classification we may do so and extract and apply the rule controlling herein. This may be done if we disregard inapposite language in some opinions and closely regard or heed the precise facts in each case. " We think that each case must depend on its own facts for classification as a nuisance at law, or in fact, *or neither.*" (Italics ours.) (*Melker* v. *City of New York,* 190 N. Y. 481, 488.)

(1) When a property owner maintains a courtyard, a structure or an article on a public street, for a street purpose, pursuant to express permission under an ordinance, its maintenance is not a nuisance, as a matter of law, in the absence of danger due to its form, character or condition of disrepair. (*Matter of Clinton Avenue,* 57 App. Div. 166; affd., 167 N. Y. 624; *Linton* v. *Coupe, supra; City of New York* v. *Masten,* 174 App. Div. 661; affd., 223 N. Y. 638; *Tymon* v. *M. L. S. Construction Co., supra.*)

(2) When a property owner to " ' eke out the inconvenience of his own premises,' " for the purposes of trade or business, that is, for a use which is not a customary or traditional street purpose, maintains an incumbrance or obstruction on a public street, it is a nuisance as a matter of law. (*McCloskey* v. *Buckley, supra,* pp. 191, 193; *Kunz* v. *City of Troy,* 104 N. Y. 344; *Wells* v. *City of Brooklyn,* 9 App. Div. 61; *Cohen* v. *Mayor; etc., of New York,* 113 N. Y. 532.)

(3) When a property owner, without an express permit so to do, indulges in a customary or traditional street use to beautify his property or to facilitate its enjoyment, the maintenance of such a structure, article or object on the public street, as distinguished from its intrinsic character or condition, is not a nuisance, as a matter of law. (*Robert* v. *Powell,* 168 N. Y. 411; *Dougherty* v. *Village of Horseheads,* 159 id. 154; *McCloskey* v. *Buckley, supra.*)

(4) When a property owner, for a private or non-business use, encroaches upon a public street or sidewalk, for other than a street purpose, but which use closely resembles a street purpose, such as a stoop or an entrance post or structure, whether such a theoretical obstruction is a nuisance is, ordinarily, a question of fact and not one of law. (*McCloskey* v. *Buckley, supra* [entrance post]; *Shaw* v. *City of New York,* 253 App. Div. 924 [cement coping with low iron picket fence]; *Saphir* v. *Childs Co., Inc.,* 243 id. 636 [projecting water faucet].)

(5) When a property owner maintains a structure on a public street, which is a part of what is essentially a street purpose or use, but which, by reason of its permanent character or condition may be held to be intrinsically and potentially dangerous, whether or not such structure is a nuisance to one coming in contact with it inadvertently, is ordinarily a question of fact (*Bland* v. *Kaufman,* 249 App. Div. 842 [low iron fence with sharp pickets]); and the rule is the same as to what likewise may be held to be an intrinsically and potentially dangerous temporary structure or obstruction. (*O'Rourke* v. *Castagnola,* 242 App. Div. 638 [low posts and wires].)

The case at bar is *sui generis* or it belongs in the above third group. After the writer filed his opinion when this case was decided his attention was called to section C26–233.0 of the Administrative Code of the City of New York (Laws of 1937, chap. 929). That section relates to " Existing encroachments beyond the building line." It provides that " Such parts of structures as project beyond the building line on January first, nineteen hundred thirty-eight, may be maintained as constructed until their removal is directed by the council or the board of estimate * * *." The structure herein existed on that day, and so much of it as inclosed an eight-foot portion of the courtyard projected beyond the building line. This statute is the equivalent of an express permission given prior to the erection of the structure. This statutory provision, therefore, permits or requires that this case be allocated to the first group set out in the opinion (*Pine Grove Poultry Farm, Inc.,* v. *Newtown By-Products Mfg. Co., Inc.,* 248 N. Y. 293). It parallels the facts in *Robert* v. *Powell (supra),* except in one particular. There, as here, the property owner indulged in a traditional street use, to wit, a stepping-stone. He had, as here, no express permit so to do. (See record on appeal, GAYNOR, J., fol. 32.) There, as here, the condition of the structure was not the subject of complaint. There, the structure was entirely on the sidewalk in a heavily built-up residential section in Manhattan. Here, the structure is partly on a sidewalk in an outlying suburban residential section. There, as here, a claimed prohibitory ordinance, to which reference hereinafter will be made, was invoked. There, the structure narrowed the space on the sidewalk for pedestrians to eight feet; here, the sidewalk space was narrowed to ten feet, six inches, but without changing the actual sidewalk or street line as fixed by adjacent buildings. There, at night, the plaintiff attempted to cross the sidewalk to hail or get a cab and unwittingly stumbled over the structure. Here, the plaintiff, in daylight, tripped over the struc-

ture while consciously stepping over it. There, the complaint was dismissed on the theory that the structure, being a street use, was not a nuisance, as a matter of law. Here, a similar ruling would be required by that case. There, the factual set-up was less favorable to the defendant than it is in this case.

To emphasize the narrow grounds necessary to such a holding herein, it may be observed that under the doctrine of *Robert* v. *Powell* (*supra*), this courtyard fence would not be a nuisance, as a matter of law, as to an ordinary pedestrian inadvertently falling over it at a point on the eight-foot portion of the courtyard, within the legal street line but not within the actual sidewalk line. But this need not be decided. It may well be that such a structure might be a nuisance as a matter of fact as to one person, and not a nuisance as a matter of law as to another, depending upon whether the contact was due to a deliberate act, a voluntarily assumed posture and close proximity, with immediate and present knowledge of the existence of the structure, or was due to an inadvertent contact occurring under circumstances where the existence of the structure would not be necessarily present in the mind of the person injured.

Therefore, under the doctrine of the third group of cases, to which the factual situation herein requires this case to be allocated, the structure as to the eight-foot portion of the courtyard, was not, as to this plaintiff, under the circumstances of the incident herein, a nuisance, as a matter of law.

(C) It is urged that under the Administrative Code of the City of New York, section 82d6–1.0, the courtyard and structure surrounding it were prohibited. This provision forbidding incumbering and " lumbering " of sidewalks was formerly section 140 of article 13 of chapter 23 of the Code of Ordinances of the City of New York. This provision and the predecessor counterparts thereof, since the year 1793, have all been directed against incumbrances upon and user of streets by abutting owners for business, commercial, trade and similar purposes; that is, for other than traditional street purposes or uses. It has no application herein. A similar prohibitory ordinance was so construed in *Robert* v. *Powell* (*supra*) and held not to relate to or concern a street purpose or use.

(D) It should be further observed that the instructions to the jury did not inform it, with adequate clearness, as to the factors it should consider in determining whether this courtyard fence

was a nuisance, if the question were one of fact, such as the extent of sidewalk left available for pedestrians, in relation to adjacent sidewalks; the general character of the neighborhood; whether the street was a much traveled one; whether a distinction was fairly to be made between a street in an outlying section and a street in a congested part of the town, and whether or not a distinction was to be made as between a pedestrian contacting it inadvertently and one contacting it as an incident to deliberate action with vivid present knowledge of the existence of the fence.

The judgment should be reversed on the law and the facts, with costs, and the complaint dismissed on the law, with costs.

The order, in so far as it denies the motion of defendant The City of New York for judgment over on its cross-complaint against defendant McLaughlin, should be affirmed, with costs to defendant McLaughlin against the appellant The City of New York.

The appeal by defendant The City of New York from so much of said order as denies its motion to set aside the verdict and to grant a new trial should be dismissed, without costs.

HAGARTY and CLOSE, JJ., concur; LAZANSKY, P. J., in opinion, concurs in the determination of the appeal from the order, and concurs for the reversal of the judgment, but dissents as to the dismissal of the complaint and votes for a new trial; TAYLOR, J., concurs with LAZANSKY, P. J.

LAZANSKY, P. J. (dissenting in part). I concur for reversal of the judgment, but dissent as to the dismissal of the complaint and vote for a new trial.

Assuming that the grassplot inclosed by an eighteen-inch wire fence, extending out from the building line eight feet for a width of fifteen feet, five inches, may be deemed a " bit of *rus in urbe*," it is not a nuisance as a matter of law, but may be, as the jury may have found, a nuisance as a matter of fact. (*McCloskey* v. *Buckley*, 223 N. Y. 187.) Upon that basis, the case will be considered.

Sidewalks are for the absolute use of the public (*Acme Realty Co.* v. *Schinasi*, 215 N. Y. 495), subject, however, even without permit from the municipality, to certain incidental and necessary users by the abutting owner. (*Robert* v. *Powell*, 168 N. Y. 411.) Save that, an owner is under a duty to refrain from obstructing a sidewalk with objects which may be a source of danger, and

the municipality owes a duty not to tolerate such obstructions. When the failure by either to observe such duty results in an accident, liability may follow. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339.) The infant plaintiff had the legal right to step over the fence to retrieve his ball. (*Tymon* v. *M. L. S. Construction Co.*, 262 N. Y. 161.) The presence of the fence required body movements by plaintiff which, if the fence had not been there, would not have been called into play. The accident would not have happened were it not for the obstruction (*O' Neill* v. *City of Port Jervis*, 253 N. Y. 423), and liability ensues unless plaintiff was guilty of contributory negligence.

Cases are cited (*King* v. *Village of Fort Ann*, 180 N. Y. 496; *Flansburg* v. *Town of Elbridge*, 205 id. 423, and *Horton* v. *City of New York*, 213 App. Div. 172) holding that a municipality cannot be liable for injuries sustained by an individual consequent upon his straying from an adequate and suitable roadway prepared for travelers. Those cases are not pertinent. The duty and obligation of the municipality were held to be limited to the part of the road which was graded for use by the public. In the case at bar, the entire sidewalk was dedicated to public use and, as already stated, plaintiff to retrieve his ball had the right to enter the inclosure, which was an unlawful encroachment upon the rights of the public.

It is also proposed that the inclosure might not be a nuisance as to one who deliberately (which is not the fact here) came in contact with it, having present actual knowledge of its existence. Assuming that to such an actor the creator of a nuisance owed no duty, the rule proposed (*volenti non fit injuria*) is not applicable in view of the nature of the nuisance and the act of plaintiff with respect thereto. Cases are later considered, in each of which it was held that a municipality permitting an obstruction to be continued on a public highway was liable to a person injured thereby, though the latter had present knowledge of its existence and yet proceeded over it. Some of those cases are snow and ice cases, frequently referred to as negligence actions, but more accurately defined as actions in nuisance growing out of negligence. (*McFarlane* v. *City of Niagara Falls*, 247 N. Y. 340.) However, it should be noted that nuisance and contributory negligence were considered as coexistent in *Delaney* v. *Philhern Realty Holding Corp.* (280 N. Y. 461) and *McFarlane* v. *City of Niagara Falls* (*supra*).

The question of contributory negligence was a question of fact for the jury. The infant plaintiff was thirteen and one-half years of age. He sought to retrieve his ball which had gone into the inclosure and lay two or three feet from the front part encroaching on the sidewalk. He placed one foot over the fence, tried by leaning forward, but failed, to reach the ball. Then he raised his other foot to bring it over the fence, but did not raise it high enough to clear the fence, which he struck at the top, fell over, and was injured. It is fair to assume from the position in which he was when he struck the fence that he was looking forward and did not, as he said, see his foot catch the fence. His mind may have been divided between his movements and the ball, but the latter was the more important. In my opinion, it cannot be said that plaintiff in his attempt to reach his ball indicated such a want of ordinary care that no reasonable mind could draw a contrary conclusion. (*Seyford* v. *Southern Pacific Co.*, 216 N. Y. 613.) (See *Delaney* v. *Philhern Realty Holding Corp.*, *supra*, where it was held that, when the nuisance was based on an act which was unlawful, even if performed with due care, then something more than a mere want of ordinary care on the part of the plaintiff is required to prevent recovery.) A jury might properly find that, under the circumstances, the misstep was not negligent. Not infrequently do adults make missteps, a common instance of which is falling up stairs. Such mishaps cannot be said to be negligence *per se.* It depends upon the conditions under which they take place. (*Feinman* v. *Rubenstein*, 240 App. Div. 899; affd., 264 N. Y. 662, two judges dissenting; *Mosheuvel* v. *District of Columbia*, 191 U. S. 247.) From the record in the *Feinman* case in this court, it appears that a ball, with which plaintiff and his brother were playing, came to rest on the sidewalk near one of the pegs which was used to surround with string a grassplot between the paved part of the sidewalk and the curb. Plaintiff ran slowly toward the ball and, at a distance of seven or eight feet from the peg, he looked at the peg and at the ball, which was a few inches from the peg. He kept on running and tripped over the peg. It was held that the question of contributory negligence was for the jury.

A case, the facts of which are quite similar to those in the case at bar, is *Mosheuvel* v. *District of Columbia* (*supra*). Plaintiff fell over a water box in the sidewalk at the bottom of three steps which led from a brick-paved landing at the front of her house. There was no place of egress from the house to the street other

than by these steps. The box was situated about midway of the steps and, in order to go from the lowest step to the sidewalk, it was necessary to go either to the right or to the left, which it would have been safe to do, or to take a step over the box and clear it. The box was about four inches square, projecting irregularly above the level of the street and was without covering of any kind. Its condition was known to the authorities and had been in the same condition about nine months before the accident. It was visible from the door of plaintiff's house. It appeared that another lady had stumbled over the obstruction some time before the accident to plaintiff. Plaintiff herself had stumbled over it once before, although she testified she usually went to one side or the other and not over the box. On the day of the accident plaintiff was going out to visit a neighbor in an adjacent house. She testified that, from the time she left her door, she had the box in view a part of the time, and had it in mind all the time, and remembered its dangerous character; but on this occasion, she attempted to step over it instead of going to one side, did not take a sufficiently long step, and put her foot into the hole and was thrown, with the result that she suffered serious injury. It was held (three justices dissenting) that the question of contributory negligence of the plaintiff was for the jury. *Pomfrey* v. *Village of Saratoga Springs* (104 N. Y. 459); *Evans* v. *City of Utica* (69 id. 166) and *Bullock* v. *Mayor, etc., of N. Y.* (99 id. 654) are cited. It should be noted that in the *Mosheuvel* case plaintiff had her eyes forward looking in the direction of the obstruction, and also had it immediately in mind while she was going toward it, although in view only part of the time. In the case at bar, plaintiff had not only the obstruction but also the ball in mind, and his eyes at the time his left foot struck the fence were beyond it. The rule deducible from that case is that, if the jury find that plaintiff had reasonable cause to believe he could go over the obstruction in safety and used reasonable care in the attempt, he is entitled to recover. In the circumstances of this case, as already indicated, a jury might find, as the jury here found, favorably to plaintiff on both of these propositions.

That plaintiff had immediate present knowledge of the existence of the fence does not charge him with contributory negligence as a matter of law. (*Feinman* v. *Rubenstein, supra; Mosheuvel* v. *District of Columbia, supra; Williams* v. *City of New York,* 214 N. Y. 259; *Evans* v. *City of Utica, supra; Twogood* v. *Mayor,*

*etc., of N. Y.*, 102 N. Y. 216; *Pomfrey* v. *Village of Saratoga Springs, supra.*) The cases, other than the first two, involved accidents growing out of the accumulation of snow and ice on the streets of municipalities. In the *Williams* case plaintiff had slipped on the sidewalk just before he fell the second time and broke his leg. He pursued his way along the icy sidewalk instead of crossing the street to a sidewalk which was entirely clear. It was held that this was not contributory negligence as a matter of law, but was a question for the jury. The other cases are to the same effect.

It is claimed that, because the occupation of the sidewalk had existed for at least ten years a permit by the municipal authorities to use the sidewalk as it was used would be presumed and, therefore, there could be no present nuisance. This question was neither raised by the pleadings (*Clifford* v. *Dam*, 81 N. Y. 52, cited in *McFarlane* v. *City of Niagara Falls, supra*) nor advanced on the trial. Had the claim of presumed permit been made by defendants, plaintiff might have submitted proof that no permit had been granted.

Appellant McLaughlin urges as a ground for reversal that she became the owner of the premises two years before the accident and that there was no proof that she had maintained that part of the grass plot and fence which intruded upon the sidewalk. The case was tried upon the theory that that appellant was maintaining that part of the grass plot and fence and no question to the contrary was raised on the trial. Had it been suggested, plaintiff would have had an opportunity of presenting proof that, during the period of her ownership, defendant maintained that part of the grass plot and fence.

However, there must be a reversal and a new trial. The court, in effect, charged the jury that the grass plot and wire fence were a nuisance as a matter of law. Although no exception was taken to the charge in this respect, the court was requested, and refused, to charge that " The mere fact that the grass plot and the enclosure exists beyond the building line does not of itself constitute an obstruction sufficient to charge the City with liability for that reason alone." Thus, the court refused to charge that the obstruction was not a nuisance as a matter of law. This was error. Furthermore, if this be a case of nuisance as a matter of fact, there was a failure on the part of the court to charge the jury as to items to be considered in determining whether or not there was a nuisance

as a matter of fact, such as the " location and construction " of the grass plot and fence, the extent of its intrusion upon the sidewalk, the part of the sidewalk available for public use, the extent to which the sidewalk was used, including the use by children as a playground, and any other facts and circumstances which would have a bearing upon the use of the sidewalk.

The judgment should be reversed and a new trial granted.

In view of my conclusion that there should be a new trial, I concur in the determination of the appeal from the order.

TAYLOR, J., concurs with LAZANSKY, P. J.

Judgment reversed on the law and the facts, with costs, and the complaint dismissed on the law, with costs.

Order, in so far as it denies the motion of defendant The City of New York for judgment over on its cross-complaint against defendant McLaughlin, affirmed, with costs to defendant McLaughlin against appellant The City of New York.

Appeal by defendant The City of New York from so much of said order as denies its motion to set aside the verdict and to grant a new trial dismissed, without costs.