■ ANTOKOL & COFFIN, Respondent, v NANCY E. MYERS, Appellant. [819 NYS2d 303]—

Spain, J. Appeals (1) from an order of the Supreme Court (Kramer, J.), entered April 30, 2004 in Schenectady County, which granted plaintiff's cross motion for summary judgment dismissing the counterclaim, and (2) from a judgment of said court, entered November 3, 2004 in Schenectady County, upon a verdict rendered in favor of plaintiff.

In 1989, defendant retained Richard Antokol, an attorney with plaintiff, a City of Schenectady law firm, to represent her in connection with a matrimonial action commenced by her then husband. In that action, the husband sought a divorce on the grounds of adultery, abandonment and cruel and inhuman treatment based upon defendant's extramarital affair. Defendant counterclaimed for divorce on the grounds of adultery and cruel and inhuman treatment, alleging that the husband fathered an out-of-wedlock child. At trial, defendant and the husband litigated the issues of marital fault and the equitable distribution of their property, including the largest single asset in their sizeable marital estate, a family-owned oil business acquired by the parties from defendant's parents in the 1970s. Following trial, Supreme Court granted the husband a divorce on the ground of cruel and inhuman treatment and generally adopted the valuation testimony of his expert as to the oil business. On appeal, this Court modified that judgment, finding, among other things, that Supreme Court should have discounted the value of the oil business due to the relatively limited market for a closely-held corporation (see Myers v Myers, 255 AD2d 711 [1998]).

When defendant refused to continue paying plaintiff's fee, plaintiff commenced the instant action for breach of contract and account stated, seeking a judgment for legal services rendered in connection with the divorce action. Defendant answered and counterclaimed for legal malpractice, alleging, among other things, that, in rendering his services, Antokol was careless, negligent and unprepared for trial. Following discovery, defendant moved for dismissal or, in the alternative, summary judgment on the ground that plaintiff failed to properly bill her. Plaintiff then cross-moved for summary judgment to dismiss the legal malpractice counterclaim. Supreme Court granted plaintiff's cross motion and dismissed defendant's counterclaim.[1]

Following a five-day jury trial on plaintiff's claims, the jury

---

1. Supreme Court did not expressly rule on defendant's motion for dismissal or summary judgment. Inasmuch as defendant does not address the is-

returned a verdict in plaintiff's favor awarding counsel fees, and Supreme Court denied defendant's motion to set aside the verdict. Defendant now appeals from the order granting plaintiff's cross motion for summary judgment dismissing her legal malpractice counterclaim, as well as the judgment entered upon the jury's verdict (*see* CPLR 5501 [a] [1]).

Insofar as defendant contends that issues of fact regarding plaintiff's malpractice precluded summary judgment dismissing her counterclaim, plaintiff—as movant—sufficiently carried its burden in asserting that Antokol was prepared for the divorce trial, his failure to establish the husband's adultery would not necessarily have increased defendant's maintenance award, and his failure to give timely notice of his intention to call James Buhrmaster as an expert witness would not necessarily have resulted in a higher valuation for the oil company. In response, defendant addressed only the issue of Buhrmaster's testimony in her papers opposing the cross motion and ultimately failed to raise triable issues of fact on that issue so as to preclude summary judgment in plaintiff's favor (*see Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]).

" "To recover damages for legal malpractice, a [client] must demonstrate that the attorney was negligent, that the negligence was a proximate cause of the loss sustained and that [the client] suffered actual and ascertainable damages' " (*Ehlinger v Ruberti, Girvin & Ferlazzo*, 304 AD2d 925, 926 [2003], quoting *Busino v Meachem*, 270 AD2d 606, 609 [2000] [citations omitted]). Mere speculation about a loss resulting from an attorney's poor performance is insufficient to sustain a prima facie case of legal malpractice (*see Metz v Coopers & Lybrand*, 210 AD2d 624, 626-627 [1994]). Moreover, it is incumbent upon the aggrieved party to " 'show that [he or she] would have been successful in the underlying action' " (*Amodeo v Gellert & Quartararo, Inc.*, 26 AD3d 705, 707 [2006], quoting *Brodeur v Hayes*, 18 AD3d 979, 980 [2005], *lv dismissed and denied* 5 NY3d 871 [2005]).

In the only issue preserved on her appeal from the award of summary judgment to plaintiff on the legal malpractice counterclaim, defendant contends that Antokol's failure to provide timely disclosure of Buhrmaster as an expert resulted in a lower valuation of the oil company. During the divorce trial, Susan Watson, defendant's expert witness, valued the oil company considerably higher than did defendant's husband's expert, John Johnson.

Although defendant contends that Buhrmaster, her proposed

sues raised in that motion in her brief, they are deemed abandoned (*see Peak v Northway Travel Trailers, Inc.*, 27 AD3d 927, 928 [2006]).

expert, would have testified that the value of the oil company was $650,000 greater based upon the existing sales market and that Watson could have used this evidence to value the business higher, this claim appears only in her attorney's affidavit in response to plaintiff's cross motion for summary judgment. Absent from the record is an affidavit from either Buhrmaster or Watson as to Buhrmaster's proffered testimony and its effect on Watson's valuation. Moreover, in the face of Johnson's testimony, defendant's allegation that Buhrmaster's testimony would have actually resulted in a higher valuation by Watson or ultimately by the court is pure conjecture (*see Brodeur v Hayes, supra* at 981; *Thaler & Thaler v Gupta,* 208 AD2d 1130, 1132 [1994]; *Perry v Klein,* 198 AD2d 576, 577 [1993]). Failing to produce an affidavit from a witness with personal knowledge or proof of actual and ascertainable damages, defendant did not raise triable issues of fact with respect to this issue (*cf. Tabner v Drake,* 9 AD3d 606 [2004]). Accordingly, plaintiff's cross motion for summary judgment dismissing the malpractice counterclaim was properly granted.

We now turn to defendant's assertion that she was denied a fair trial. Defendant contends that Supreme Court erred by failing to give proper curative instructions after the jury heard—several times—evidence that her malpractice counterclaim had been dismissed. In response to comments by defendant's counsel during his opening statement regarding the poor quality of Antokol's services, plaintiff's counsel objected, noting: "Judge, I've got to object. You know you already ruled on the competency in this case. You already made a ruling about the counterclaim. You know frankly it's gone. That's exactly what [defendant's counsel] is talking about now, the same allegations that you dismissed and I object. I hate to interrupt [defendant's counsel] but these are the exact allegations that were brought to you. You made a ruling. They're gone . . . They're not part of this case." In response, Supreme Court stated, "I don't want to say too much in front of the jury but I will say this. I did dismiss a counterclaim, but I think performance is relevant here . . . We will take it one step at a time and see what may or may not be relevant."

During cross-examination of Antokol, defendant's counsel moved to strike Antokol's response to a question about the extent of his files in which he referred to "the malpractice lawsuit that was dismissed." The testimony was stricken as nonresponsive and, following a request by defendant's counsel for a curative instruction, Supreme Court stated, "I am going to strike that from the record. And I'm not going to repeat it. I ask

you to disregard the last answer that Mr. Antokol gave." Later in the trial, in response to a statement by defendant's counsel that this action was commenced at Antokol's invitation, Antokol replied, "Excuse me. She sued me for malpractice and that was dismissed." Defendant's counsel again objected, noting, "Your [h]onor, that was a counterclaim. You already told the jury, and I want an instruction that they are to disregard that remark. It has nothing to do with him suing her for breach of contract." In response, Supreme Court stated: "[I]t has been mentioned there was a counterclaim many times and that is not part of this case. And I tell you that again. I mentioned it before that should be removed from your minds. It's not part of this case. The only case here today is the case that Mr. Antokol brought against the defendant." In the final charge the jury was reminded by the court that it could not consider "testimony which has been stricken from the record" in reaching its decision.

Where the trial court acknowledges error in the admission of evidence and gives a curative instruction, reversal is not required if the instruction is sufficient to alleviate the prejudicial effect of the error (*see Cramer v Benedictine Hosp.*, 301 AD2d 924, 928 [2003]; *Dennis v Capital Dist. Transp. Auth.*, 274 AD2d 802, 803 [2000]). In turn, "[a] curative instruction is sufficient to obviate a trial error if it is given in such explicit terms as to preclude the inference that the jury might have been influenced by the error" (*Dennis v Capital Dist. Transp. Auth., supra* at 803). Here, although Supreme Court instructed the jury to disregard the dismissal of defendant's malpractice counterclaim, it failed to explain that it was not making any determination as to the merits of that claim, or adequately express that *the jury would still be expected to consider the quality of Antokol's work in performing his contracted services,* an issue which remained in the case despite the dismissal of the malpractice claim (*see Geist v Chock Full O'Nuts Corp.*, 55 AD2d 889, 890 [1977], *lv denied* 41 NY2d 804 [1977]). In our view, Supreme Court's isolated statement, "I think performance is relevant," without more, was not sufficient to remove the inference that the jury was unduly influenced by these errors. Although defense counsel failed to object to Supreme Court's curative instructions or request any further instructions, this Court may order a new trial in its discretion upon an unpreserved error in a jury instruction when that error is fundamental, i.e., " 'so significant that the jury was prevented from fairly considering the issues at trial' " (*Pyptiuk v Kramer*, 295 AD2d 768, 771 [2002], quoting *Kilburn v Acands, Inc.*, 187 AD2d 988, 989 [1992]; *accord Curanovic v New York Cent. Mut. Fire Ins. Co.*, 22 AD3d 975, 976-977 [2005]; *see* CPLR 4404 [a]). Indeed,

the lack of explicit curative instructions, combined with the court's inadequate final charge to the jury, created a perceptible basis for confusion on the part of this jury.

In its charge to the jury, Supreme Court read PJI 4:30 (2006), directing the jury to resolve three questions of fact: (1) whether defendant breached the agreement with plaintiff by nonpayment, (2) whether plaintiff performed all of the services agreed to under the agreement, and (3) the amount of the reasonable value of the services provided, with the caveat that if the first two questions are answered in the affirmative, the third question should not be answered. In considering the reasonable value of plaintiff's services, Supreme Court further instructed the jury to consider: "the character of the services, the nature and importance of the [litigation], the degree of responsibility assumed by the attorney, the amount or value involved, the length of time spent, the ability, skill and experience required and exercised, the character, qualifications and standing of the attorney and the results achieved" (PJI 4:30 [2006]). During deliberations, Supreme Court received a note from the jury asking for a read-back of the foregoing criteria and inquiring whether it could use these in determining the answers to the first two questions. Supreme Court replied, "I can't really answer that . . . You use all the evidence to answer all of these questions and if you do get to the reasonable value [question], question 3, those are the criteria you put into play to make a decision." The court then reread what the jury should consider in determining the reasonable value of plaintiff's services. Thereafter, the jury returned the verdict sheet on which it answered "yes" to questions numbered 1 and 2 and indicating, in response to question 2, that plaintiff performed all of the services agreed to under the agreement, but also wrote in the word "poorly" on the verdict sheet. Supreme Court then instructed the jury to go back and answer the questions only as they were set forth and without any extra verbiage on a new verdict sheet. The jury then quickly returned a verdict in plaintiff's favor on the new verdict sheet with exactly the same answers as the original verdict sheet, absent the qualifier "poorly."

Although Supreme Court's final instructions were nearly verbatim to those in PJI 4:30 (2006), the comment which accompanies that charge notes that the charge "assumes that defendant has raised no question concerning the quality of plaintiff's services. If such a question is raised, PJI 4:1 may be adapted if the defendant alleges breach of contract, or PJI 2:152

if the defendant alleges malpractice."[2] Accordingly, Supreme Court's statement that it "[couldn't] really answer" how to decide the question of Antokol's performance failed to apprise the jury that it could consider whether Antokol *adequately* performed the contracted services, not simply whether he completed them.

In short, it appears on this record that the jury could not have clearly understood that it could take the *quality* of Antokol's services into account in determining whether such services had been "performed."[3] Inasmuch as plaintiff's case was predicated upon Antokol's performance of the contract, a new trial is warranted (*see Capicchioni v Morrissey*, 205 AD2d 959, 960 [1994]; *compare Curanovic v New York Cent. Mut. Fire Ins. Co., supra* at 976-977; *Brown v Dragoon*, 11 AD3d 834, 835-836 [2004], *lv denied* 4 NY3d 710 [2005]; *Johnson v Grant*, 3 AD3d 720, 721-722 [2004]).

Mercure, J.P., Crew III, Mugglin and Kane, JJ., concur. Ordered that the order is affirmed, without costs. Ordered that the judgment is reversed, on the law and as a matter of discretion in the interest of justice, without costs, and matter remitted to the Supreme Court for a new trial.

---

2. Although a malpractice charge likely would be precluded by the law of the case doctrine because Supreme Court previously dismissed defendant's counterclaim as a matter of law (*see Noble v Cole*, 267 AD2d 702, 702 [1999]), that doctrine would not have precluded a breach of contract charge.

3. This problem was not helped by the fact that plaintiff's exhibit No. 1, the retainer agreement—which was received in evidence—was incomplete. It referenced the "annexed" statement of client's rights and responsibilities (*see* 22 NYCRR part 1400, form 1400.2-1), but the statement itself was not part of the agreement introduced at trial. Thus, the jury did not consider whether Antokol's duties to "represent [defendant] zealously" and exert his "best efforts" on her behalf were part of the agreement. While defendant concedes on appeal that counsel failed to raise this issue at trial and, thus, has not preserved it for review, the absence of that statement from plaintiff's exhibit clearly contributed to the jury's confusion (*see Pyptiuk v Kramer*, 295 AD2d 768, 771 [2002], *supra*).