■ MEGA GROUP, INC., Appellant, v PECHENIK & CURRO, P.C., et al., Respondents. (Action No. 1.) MEGA PERSONAL LINES, INC., Appellant, v MEGA GROUP, INC., Appellant, and PECHENIK & CURRO, P.C., et al., Respondents. (Action No. 2.) [819 NYS2d 796]—

Spain, J. Appeals (1) from an order of the Supreme Court (Nolan, Jr., J.), entered March 30, 2005 in Saratoga County, which, inter alia, granted defendants' motion for summary judgment dismissing the complaint in action No. 1, and (2) from an

order of said court, entered October 20, 2005 in Saratoga County, which, inter alia, granted a motion by defendants Pechenik & Curro, P.C. and Stephen A. Pechenik for summary judgment dismissing the complaint and cross claims against them in action No. 2.

These appeals represent the next chapter in a series of related actions which have made their way to this Court (*Matter of Mega Personal Lines, Inc. v Halton*, 9 AD3d 553 [2004]; *Matter of Mega Personal Lines v Halton*, 297 AD2d 428 [2002]; *Mega Group v Halton*, 290 AD2d 673 [2002]). The two precipitating events of this array of litigation are the firing of Robert Halton by plaintiff/defendant Mega Group, Inc. (hereinafter Mega) and Mega's subsequent sale of virtually all of its assets to plaintiff Mega Personal Lines, Inc. (hereinafter MPL).

Halton's termination was followed by litigation between Mega and Halton (hereinafter the Halton action). Halton successfully moved for summary judgment after Mega, then represented by defendants Stephen A. Pechenik and Pechenik & Curro, P.C. (hereinafter collectively referred to as the attorneys), failed to oppose the motion, resulting in a default judgment in favor of Halton against Mega. Prior to entry of that judgment but while the litigation was pending, Mega entered into a purchase/sale agreement with MPL for the sale of virtually all of Mega's assets (hereinafter the sale). By the terms of the purchase/sale agreement, Mega's principal, Steven Gregory, obtained a 40% equity stake in MPL. In conjunction with the sale, the attorneys were required to provide, on behalf of Mega, an opinion letter discussing the legality of the proposed sale. Following the sale and by virtue of its default judgment against Mega in the Halton action, Halton levied restraints upon business accounts titled in Mega's name, but which legally belonged to MPL. Halton claimed, among other things, that the transfer of Mega's assets to MPL violated Debtor and Creditor Law § 273-a.

In the first appeal before us, Mega commenced a legal malpractice action against the attorneys (hereinafter action No. 1), asserting that they had been negligent in defending Mega's interests in the Halton action and in rendering advice in connection with the sale. The attorneys moved for summary judgment dismissing the complaint. Mega opposed the motion and cross-moved for summary judgment. Finding that Mega failed to demonstrate that it had suffered any actual or ascertainable damages due to the attorneys' alleged malpractice, Supreme Court granted the attorneys' motion and dismissed Mega's complaint. Mega appeals, and we affirm.

The second action was commenced by MPL against Mega and

the attorneys (hereinafter action No. 2), asserting various causes of action based on the alleged nondisclosure by Mega and the attorneys of the pending claims by Halton against Mega at the time of the sale and upon the attorneys' alleged negligence in rendering the opinion letter. Mega asserted cross claims for contribution and indemnification against the attorneys. The attorneys moved for summary judgment and, finding that their assertions in the opinion letter were not negligent, Supreme Court granted the motion and dismissed the complaint and Mega's cross claims against the attorneys. Both MPL and Mega appeal, and we affirm.

In action No. 1, Mega's legal malpractice complaint was properly dismissed. To establish legal malpractice, a plaintiff must show that " 'the attorney was negligent, that the negligence was a proximate cause of the loss sustained and that plaintiff suffered actual and ascertainable damages' " (*Ehlinger v Ruberti, Girvin & Ferlazzo*, 304 AD2d 925, 926 [2003], quoting *Busino v Meachem*, 270 AD2d 606, 609 [2000]; *see Brodeur v Hayes*, 18 AD3d 979, 980 [2005], *lv dismissed and denied* 5 NY3d 871 [2005]; *Tabner v Drake*, 9 AD3d 606, 609 [2004]). Here, an attorney-client relationship existed between Mega and the attorneys, and Mega's pleadings contain sufficient facts to support the conclusion that the attorneys were negligent in defending Mega in the Halton action. As Supreme Court properly found, however, Mega has failed to state facts sufficient to find that it has suffered any actual and ascertainable damages.

First, Mega cannot claim any disadvantage in negotiating the sale by virtue of the attorneys' alleged negligence in connection with the Halton action because neither Mega nor MPL claims any knowledge that Halton had in fact made cross claims against Mega when the sale took place (*see Busino v Meachem, supra* at 608). Further, although a default judgment was entered against Mega in the Halton action, it is clear from the record that Mega did not pay that judgment and the judgment has now been satisfied; Mega, MPL and Halton entered into a stipulation of settlement resolving the Halton action whereby a portion of the escrowed funds already due to MPL by virtue of its purchase of Mega's assets were transferred to Halton. Mega did not pay anything to Halton, or any other party, in connection with the settlement. All parties to the settlement signed general releases to one another, but the details of the settlement and those releases are not in the record; thus, it is unclear to what extent, if any, Mega may be held liable to MPL in action No. 2 for alleged damages flowing from the Halton action. Mega's

claim that it has suffered damage in the form of potential liability to MPL, should MPL succeed in action No. 2, is too speculative to support the malpractice cause of action (*see Peak v Bartlett, Pontiff, Stewart & Rhodes, P.C.*, 28 AD3d 1028, 1031 [2006]; *Brodeur v Hayes, supra* at 981). Finally, Mega's assertion that it has been damaged by legal fees incurred in the course of this litigation also is speculative. It is undisputed that Gregory—not Mega—paid the legal fees and, although he states that he made such payments on behalf of Mega, no documentary evidence exists that Mega is indebted to him or that he would be successful in seeking reimbursement from Mega, which is now a corporate shell. Finding that all damages alleged by Mega are "speculative and unsubstantiated," we conclude that Mega's legal malpractice claim was properly dismissed (*Brodeur v Hayes, supra* at 981; *see Antokol & Coffin v Myers*, 30 AD3d 843 [2006]; *Miszko v Leeds & Morelli*, 3 AD3d 726, 726-727 [2004]).

The appeal in action No. 2 is premised on the opinion letter issued by the attorneys on behalf of Mega and in connection with the sale. An opinion letter containing a negligent misrepresentation may give rise to liability to a third party even where no privity of contract exists between the maker and the third party if there is "(1) an awareness by the maker of the statement that it is to be used for a particular purpose; (2) reliance by a known party on the statement in furtherance of that purpose; and (3) some conduct by the maker of the statement linking it to the relying party and evincing its understanding of that reliance" (*Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood*, 80 NY2d 377, 384 [1992]). Ample record evidence exists which, if credited, satisfies all three prongs; the attorneys prepared the opinion letter in support of the sale with the understanding that MPL, as purchaser, would rely upon it (*see id.* at 385; *see also Fleet Bank v Pine Knoll Corp.*, 290 AD2d 792, 796 [2002]; *cf. Rayco of Schenectady v City of Schenectady*, 267 AD2d 664, 665 [1999]). On this record, MPL sufficiently pleaded facts which could establish a duty flowing to MPL from the attorneys.

To state a prima facie case of negligent misrepresentation, however, it was also incumbent upon MPL to state facts demonstrating that the duty was breached, resulting in damage to MPL (*see Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood, supra* at 385-386). MPL argues that, in the opinion letter, the attorneys had a duty to disclose Halton's then pending claims against Mega, as well as the potential that the sale could violate the Debtor and Creditor Law. The attorneys met their prima facie burden establishing

entitlement to summary judgment by averring that the opinion letter contained precisely the information called for in the parties' purchase/sale agreement and contained no misrepresentations. Indeed, although Mega, in the purchase/sale agreement, professes that no claims against it are pending, the opinion letter makes no such representations. The attorneys' opinion letter does affirmatively state: "I do not believe based upon what I have examined and know from being corporate counsel, that the execution, delivery and performance of the agreement will contravene or violate any statute . . . ." However, even assuming that the sale violated the Debtor and Creditor Law,[1] MPL has proffered no competent evidence demonstrating that the attorneys' statement was negligently made. By all accounts Mega transferred its assets to MPL for full and fair consideration, thus the attorneys make a persuasive argument that their opinion letter was accurate because no violation occurred under Debtor and Creditor Law § 273-a.[2]

In opposition to the motion, MPL submitted an expert affidavit broadly opining that "a reasonable and competent attorney should recognize that, where a corporation is conveying substantially all of its assets, any opinion letter generated in connection therewith should disclose any known claims for damages as against the transferring corporation and, where appropriate, should indicate any potential violations of the Debtor and Creditor Law." We agree with Supreme Court that this submission is insufficient to create a triable issue of fact on the issue of whether the attorneys made any negligent misrepresentation. As a term of the purchase/sale agreement, the parties to the sale carefully circumscribed the details to be contained within the opinion letter; no evidence exists that the attorneys were called upon to venture opinions beyond those agreed upon. Indeed, any further disclosures would potentially have been restricted by the attorneys' confidentiality obligations to their client (*see* Code of Professional Responsibility DR 4-101 [22 NYCRR 1200.19]; *cf. Prudential Ins. Co. of Am. v Dewey, Ballantine, Bushby, Palmer & Wood, supra* at 382 [holding that preservation of client confidentiality will not insulate attorneys from liability for negligent misrepresentation where the attorneys make an affirmative misrepresentation at the bequest of the client to the detriment of the third party]).

---

1. In the prior litigations, no definitive conclusion was reached with regard to whether the sale violated any provision of the Debtor and Creditor Law (*see Matter of Mega Personal Lines, Inc. v Halton*, 9 AD3d 553, 555-556 [2004], *supra*; *Matter of Mega Personal Lines v Halton*, 297 AD2d 428, 430 [2002], *supra*).

2. Section 273-a applies to conveyances made "without fair consideration" (Debtor and Creditor Law § 273-a).

In addition, MPL has not alleged facts sufficient to establish that the attorneys were negligent in opining that the sale would not violate any statute. As previously discussed, the sale was supported by fair consideration, suggesting no violation of Debtor and Creditor Law § 273-a.[3] Indeed, the affidavit of MPL's expert does not contain any facts or details which would support the conclusion that, under the particular circumstances surrounding the sale, the attorneys should have anticipated that the sale was in any way unlawful. Accordingly, the negligent misrepresentation claim was properly dismissed (*see Finova Capital Corp. v Berger*, 18 AD3d 256, 258 [2005]; *Marcellus Constr. Co. v Village of Broadalbin*, 302 AD2d 640, 642 [2003]; *Houlihan/Lawrence, Inc. v Duval*, 228 AD2d 560, 562 [1996]).

Finally, Mega's cross claims against the attorneys for indemnification and contribution in action No. 2 also were properly dismissed. As discussed, Mega has failed to prove any ascertainable damages as a result of any alleged acts of negligence on the part of the attorneys and—given the general releases signed in settling the Halton action and the fact that, as a result of the sale, Mega apparently has been reduced to a corporate shell—we find the possibility of Mega sustaining any actual damage in the future too speculative to support a cause of action for indemnification or contribution (*see Pennsylvania Gen. Ins. Co. v Austin Powder Co.*, 68 NY2d 465, 470 n 2 [1986]; *Peak v Bartlett, Pontiff, Stewart & Rhodes, P.C.*, 28 AD3d 1028, 1031 [2006], *supra*; *Bogdan & Faist v CAI Wireless Sys.*, 295 AD2d 849, 854 [2002]; *Henegan v Merchants Mut. Ins. Co.*, 31 AD2d 12, 14-15 [1968]).

Cardona, P.J., Mercure, Peters and Carpinello, JJ., concur. Ordered that the orders are affirmed, with costs.

---

**3.** By definition, "[f]air consideration" contemplates not only a conveyance of property of a fair equivalent, but that the exchange is made "in good faith" (Debtor and Creditor Law § 272 [a]; *see Matter of Mega Personal Lines, Inc. v Halton*, 9 AD3d 553, 555 [2004], *supra*). In the prior litigations, however, MPL took the position that the sale was made in good faith and, although the issue has never been litigated to conclusion, MPL has failed to raise a triable issue of fact as to whether the attorneys knew of any bad faith in connection with the sale.