LORETTA M. MACDONALD, Formerly Known as LORETTA M. LUCENTI, Appellant, v CHARLES GUTTMAN et al., Respondents. [900 NYS2d 177]—

Egan Jr., J. Appeal from an order of the Supreme Court (Garry, J.), entered February 2, 2009 in Tompkins County, which granted defendants' motion to dismiss the complaint.

Plaintiff commenced this action alleging damages as a result of defendants' alleged malpractice in representing plaintiff in post-divorce matters. As background, in June 1996, plaintiff, while represented by prior counsel, commenced an action for divorce against her former husband, Donald Lucenti. In December 1996, plaintiff and Lucenti entered into a stipulation and opting out agreement (hereinafter stipulation), which was incorporated into, but not merged with, their judgment of

divorce.* The stipulation, among other things, provided for the distribution of their real estate and jointly and individually held securities and mutual funds (hereinafter collectively referred to as securities). The stipulation specified that the jointly held securities would continue to be jointly held with the right of survivorship, with any future dividends to be reinvested, and that plaintiff would retain those individually held securities listed on an attached schedule as "Loretta's stocks." The stipulation provided that attorney David Tyler would represent both of them in liquidating real estate holdings and also contained a declaration that each party had made "full and complete disclosure of all income, assets and indebtedness."

Thereafter, in conjunction with Tyler's motion in Supreme Court for guidance, Lucenti—then also individually represented by an attorney—responded alleging that plaintiff was harboring ownership of certain securities not disclosed in the stipulation. Lucenti requested an accounting and that the court dispose of unreported assets without a separate action. Without denying Lucenti's non-disclosure allegation, plaintiff, through prior counsel, responded and asserted that Lucenti was violating the stipulation by cashing, rather than reinvesting, dividend checks from the jointly held securities. Plaintiff requested that the court appoint a receiver to marshal the securities and "divide and distribute them to avoid continual confusion, recriminations and litigation." Lucenti consented and, in November 2000, Supreme Court (Relihan, Jr., J.) appointed a referee to conduct an accounting of all of plaintiff's and Lucenti's securities and to make a report and recommendation to the court (see CPLR 4403). In its order, the court reserved the authority to determine "the ultimate disposition of said securities," and no appeal was taken from that order.

In June 2001, the referee submitted his report concluding, among other things, that the extent of the securities had not been fully disclosed at the time of the stipulation and, in particular, that plaintiff's holdings were much greater than originally reported. The referee recommended that all jointly held securities be divided and reissued to plaintiff and Lucenti equally. Plaintiff then retained defendant Charles Guttman (hereinafter defendant) as her attorney. Based on the referee's report and recommendation, Supreme Court (Relihan, Jr., J.), in a July

---

* According to the complaint, Lucenti suffered from mental illness that occasionally required hospitalization, and he was alleged to have been institutionalized at a mental health facility at the time that plaintiff commenced the divorce action. Seven months later, Lucenti executed the stipulation pro se.

2001 order, directed that transaction histories of all individually and jointly held securities, together with the parties' tax returns, be provided to the referee. The court further directed that the referee's accounting report be provided to plaintiff's and Lucenti's attorneys, and that counsel meet to determine if an agreement could be reached regarding the distribution of all the securities. The court reserved the authority to ratify any agreement regarding the disposition of the securities and, if no agreement could be reached, reserved the authority to determine "the fair and equitable distribution [of those securities] and any other issues the [c]ourt deems relevant and material to a final disposition of this matter." No appeal was taken from that order.

In September 2003, the referee completed his investigation and found, in part, that at the time of the stipulation, the value of all securities held individually and jointly by the parties— including those not disclosed in the stipulation—was $412,804, broken down as follows: the value of all jointly held securities totaled $201,330, the value of all securities held individually by Lucenti totaled $3,606, and the value of all securities held individually by plaintiff totaled $207,868. The referee's investigation revealed that after the divorce was granted, Lucenti received $89,323 in dividends from the jointly held securities and plaintiff received $5,176.

When plaintiff and Lucenti could not reach an agreement regarding the distribution of the securities, and after hearing arguments of counsel, Supreme Court (Relihan, Jr., J.), in a November 2003 order, determined that all the securities listed in the referee's report were marital property, and redistributed them almost evenly between plaintiff and Lucenti based on their value at the time of the 1996 stipulation. A notice of appeal was filed by plaintiff, but defendant failed to timely perfect the appeal. In December 2005, this Court denied defendant's motion seeking an extension of time to perfect the appeal. Plaintiff then commenced this legal malpractice action against defendant and his law firm, claiming that, but for defendant's failure to perfect the appeal, she would have been successful on the appeal on the ground that, in its November 2003 order, Supreme Court improperly set aside the provisions of the stipulation in redistributing the parties' securities. Supreme Court (Garry, J.) granted defendants' motion to dismiss the complaint for failure to state a cause of action. Plaintiff appeals, and we now affirm.

A claim of legal malpractice will be sustained if the plaintiff establishes "both that the defendant attorney failed to exercise

the ordinary reasonable skill and knowledge commonly possessed by a member of the legal profession which results in actual damages to a plaintiff, and that the plaintiff would have succeeded on the merits of the underlying action but for the attorney's negligence" (*Alaimo v McGeorge*, 69 AD3d 1032, 1034 [2010] [internal quotation marks and citations omitted]). Here, while there is no dispute that defendant failed to act with the ordinary skills required of an attorney, plaintiff must also demonstrate that defendant's negligence was a proximate cause of her loss sustained and that she suffered actual and ascertainable damages (*see Bixby v Somerville*, 62 AD3d 1137, 1139 [2009]; *Antokol & Coffin v Myers*, 30 AD3d 843, 845 [2006]). "Mere speculation about a loss resulting from an attorney's poor performance is insufficient to sustain a prima facie case of legal malpractice [and] it is incumbent upon the aggrieved party to show that [he or she] would have been successful in the underlying action" (*Antokol & Coffin v Myers*, 30 AD3d at 845 [internal quotation marks and citations omitted]).

Initially, we reject plaintiff's argument that the November 2003 order would have been "automatically reversed" because the stipulation was modified on a motion, without the commencement of a separate action. Although it is well established that because a stipulation that is not merged into a judgment of divorce survives the judgment as an independent contractual obligation (*see Rainbow v Swisher*, 72 NY2d 106, 109 [1988]; *Hendrix v Hendrix*, 2 AD3d 1257, 1258 [2003]) and should be modified by commencing a separate plenary action (*see Banker v Banker*, 56 AD3d 1105, 1107 n 2 [2008]; *Hoyt v Hoyt*, 307 AD2d 621, 622 [2003]; *Grieco v Grieco*, 307 AD2d 488, 488 [2003]), this Court has held that a court's alteration of a stipulation absent a plenary action is not fatal (*see e.g. Banker v Banker*, 56 AD3d at 1107 n 2; *Brender v Brender*, 199 AD2d 665, 666 n 2 [1993]; *compare Lambert v Lambert*, 142 AD2d 557 [1988]).

Here, both parties requested that Supreme Court intervene at a time when plaintiff was represented by prior counsel, and the court clearly reserved the authority to distribute and title the securities should plaintiff and Lucenti fail to come to an agreement. No appeal was taken from the order appointing the referee, nor was there any challenge to the referee's finding that all securities had not been disclosed. Likewise, there was no appeal from the order that reappointed the referee to complete his inquiry and report to the court and reserved the authority to distribute the investments in question should the parties be unable to come to an agreement on their own. Even

if plaintiff did not specifically agree to the referee's findings, she did agree to have the referee facilitate the titling of the assets in question, and she did not object to the possibility of the modification of the stipulation as reserved by Supreme Court. Thus, it does not follow that a procedural defect in the modification of the stipulation warrants automatic reversal of the order modifying the stipulation. Moreover, as "Supreme Court may, under appropriate circumstances, reform the parties' agreement to conform to their actual intent" (*Brender v Brender*, 199 AD2d at 666), plaintiff was not guaranteed a successful appeal under the theory that the court improperly modified the stipulation in accordance with the referee's report and recommendation (*see generally Murphy v Murphy*, 263 AD2d 737 [1999]). While plaintiff claims that her appeal of the November 2003 order would have been successful because she was entitled to an evidentiary hearing regarding the referee's report, Supreme Court was under no obligation to hold an evidentiary hearing and was entitled to confirm or reject the referee's report "on [its] own initiative" and make new findings "with or without taking additional testimony" (CPLR 4403; *but see Banker v Banker*, 56 AD3d at 1108; *Brender v Brender*, 199 AD2d at 666).

Finally, plaintiff argues that if she had been able to perfect her appeal from the November 2003 order and it were remitted for further proceedings, she could have sought enforcement of the stipulation or commenced an action against Lucenti for breach of contract, and any attempts to vacate the stipulation by Lucenti would have been unsuccessful. This assertion is wholly without merit as the stipulation was entered into under such questionable circumstances and the referee found that plaintiff had not fully disclosed the extent of her security holdings. Accordingly, as plaintiff cannot show that she would have been successful in her appeal or in further proceedings, her claim for legal malpractice was properly dismissed (*see Bixby v Somerville*, 62 AD3d at 1140; *Leach v Bailly*, 57 AD3d 1286, 1288 [2008]; *Amodeo v Gellert & Quartararo, P.C.*, 26 AD3d 705, 707 [2006]).

Spain, J.P., Rose, Kavanagh and Stein, JJ., concur. Ordered that the order is affirmed, with costs.