CHARLES WILLIAMS, Appellant, *v*. THE CITY OF NEW YORK, Respondent.

Municipal corporations — snow and ice upon sidewalks — duties and liabilities of municipalities in such case — when city liable for injuries caused by fall upon icy sidewalk — appeal — when refusal of trial court to grant a nonsuit reviewable in Court of Appeals.

1. In an action to recover against the city of New York for negligence, the jury would have been warranted in finding that the plaintiff slipped on a snowy and icy sidewalk and broke his leg. The sidewalk was covered with snow and hard ice, packed down and about two inches thick. The last snow storm previous thereto, which was quite a heavy one, occurred five or six days before, and none of the snow which then fell was removed before the accident.

The condition of the ice at that time was rough where people had packed down the snow, and ice had formed on top of it. There had been little flurries of snow and rain about two days before the accident. *Held*, that these facts show *prima facie* (1) a dangerous and unusual condition of the street, and (2) the lapse of sufficient time to charge the city with constructive notice of that condition.

2. The authorities reviewed, and *held*, that to render a municipality liable in this class of cases the interference with travel must be dangerous and unusual and exceptional; that the mere presence of snow or ice on a sidewalk is not enough to show that a city is negligent, but if the city negligently suffers snow and ice to remain and accumulate in a particular place, until it becomes of a permanent nature, and a dangerous obstruction to pedestrians, then it is liable. (*Brennan* v. *City of New York*, 130 App. Div. 267, approved.) But the duty of a municipality to keep its sidewalks free from snow and ice does not, in the absence of some express provision of statute, apply to the same extent to a crosswalk or crossing on a public street.

3. In *Dupont* v. *Village of Port Chester* (204 N. Y. 351, 356) it was said: "An exception to a nonsuit or dismissal of the complaint on the ground that the evidence does not show a cause of action raises a question of law that can be reviewed in this court unless the decision of the Appellate Division is unanimous." A reference to the context shows that what was meant was that an exception to a *refusal to grant* a nonsuit or dismissal of the complaint was reviewable in this court, and the omission of these words was an inadvertence.

*Williams* v. *City of New York*, 160 App. Div. 931, reversed.

(Argued January 21, 1915; decided February 25, 1915.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 17, 1914, affirming a judgment in favor of defendant entered upon a dismissal of the complaint by the court at a Trial Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Ralph G. Barclay* and *Robert Stewart* for appellant. The evidence presents a question for the jury, as to the neglect of the defendant. (*Erb* v. *City of New York*, 123 App. Div. 915; *O'Hara* v. *City of Brooklyn*, 57 App. Div.

176; *Kapper* v. *City of Yonkers,* 110 App. Div. 747; 188 N. Y. 592.)

*Frank L. Polk, Corporation Counsel (Terence Farley* and *Charles J. Nehrbas* of counsel), for respondent. The exception by plaintiff to the dismissal of the complaint does not survive the unanimous affirmance of the Appellate Division. (*Dupont* v. *Village of Port Chester,* 204 N. Y. 351.) The judgment of the court below was in entire accord with the rules, established by this court, which govern actions of this character. (*Taylor* v. *City of Yonkers,* 105 N. Y. 202; *Kaveny* v. *City of Troy,* 108 N. Y. 571; *Harrington* v. *City of Buffalo,* 121 N. Y. 147; *McNally* v. *City of Cohoes,* 127 N. Y. 350; *Lichtenstein* v. *Mayor, etc.,* 159 N. Y. 500; *Dupont* v. *Village of Port Chester,* 204 N. Y. 351; *Brennan* v. *City of New York,* 130 App. Div. 267; *Anthony* v. *Village of Glens Falls,* 4 App. Div. 218; 153 N. Y. 682; *Buck* v. *Village of Glens Falls,* 4 App. Div. 323; 156 N. Y. 683; *O'Keefe* v. *City of New York,* 29 App. Div. 524; *Staley* v. *City of New York,* 37 App. Div. 598; *Hawkins* v. *City of New York,* 54 App. Div. 258; *Berger* v. *City of New York,* 65 App. Div. 395.) In order to entitle the plaintiff to recover it was incumbent on him to show that the accident was the result of falling on the old and rough accumulation of ice, as the presumption is, in view of the snowfall two days before the accident, that the plaintiff slipped on the newly-formed ice. (*O'Keefe* v. *Mayor, etc., of New York,* 29 App. Div. 524; *Staley* v. *Mayor, etc., of New York,* 37 App. Div. 598.)

WILLARD BARTLETT, Ch. J. This is a snow and ice case against the city of New York, but not one of the usual insignificant character. Permission to appeal was granted on account of the difference which has developed for some years past between the treatment accorded to this class of cases in the first department and that which they have received in the second. In the first

department there has been manifested a strong tendency to nonsuit in many actions which would almost certainly go to the jury if they had been brought in the second department. It was thought that this variance of view might be harmonized by a re-statement on the present appeal of the rules which should control the determination of cases of this character.

The accident occurred on January 20th, 1912. The plaintiff slipped on a snowy and icy sidewalk and broke his leg. The sidewalk was adjacent to a vacant block on St. Ann's avenue, between One Hundred and Thirty-eighth and One Hundred and Thirty-ninth streets. It was all covered with snow and hard ice, packed down and about two inches thick. The snow and ice had been there during five or six days before the accident. The last snowstorm previous thereto occurred five or six days before and was quite a heavy one. None of the snow was removed after that snowstorm and before the accident. The condition of the ice was rough where people had packed down the snow and ice had formed on top of it There had been flurries of snow and rain — little flurries — about two days before the accident.

The jury would have been warranted in finding the facts as above stated.

These facts show *prima facie* (1) a dangerous and unusual condition of the street, and (2) the lapse of sufficient time to charge the city with constructive notice of that condition.

The nonsuit is sought to be sustained by several suggestions which we regard as untenable. No express or specific evidence was given as to the character of the weather which prevailed throughout the period between the snowstorm and the accident; and it is argued that the flurries of rain and snow which occurred two days before may have occasioned the formation of the ice upon which the plaintiff slipped and two days would not be long enough to charge the city with constructive notice.

It is to be observed, however, that the witness who mentioned these fluries characterized them as "little" and the suggested inference that the formation of the dangerous ice was due in some way to the warmer temperature which probably accompanied them, should not be allowed to prevail against the explicit testimony of the same witness to the effect that the condition of the sidewalk as to snow and ice "was the same" from the time of the snowstorm five or six days before to the time of the accident. Another suggestion in behalf of the respondent is that in snow and ice cases the rule should be analogous to that which prevails in the case of defective sidewalks, namely, that the law will not take into account a slight thickness of ice any more than it will predicate liability upon the existence of a slight inequality in the sidewalk, say four inches. The conditions are too dissimilar to warrant any such analogy. A surface of rough ice two inches thick may be as perilous to the wayfarer as if it were a foot in thickness. Another point urged against the plaintiff grows out of his conduct on the occasion of the accident. He had slipped down on the sidewalk just before he fell the second time and broke his leg. He pursued his way along the icy sidewalk instead of crossing the street to a sidewalk which was entirely clear. This, it is said, was contributory negligence, not merely justifying, but requiring the nonsuit. It may have been contributory negligence as matter of fact, but we think it was a question for the jury. In *Twogood* v. *Mayor, etc., of N. Y.* (102 N. Y. 216) it was held to be a question for the jury whether a plaintiff was chargeable with contributory negligence in venturing upon a walk in an icy condition when she might have avoided all danger by going upon the walk on the other side of the street which was clear and safe.

In order to render a municipality liable in this class of cases the interference with travel must be,

(1) Dangerous,

(2) Unusual or exceptional; that is to say different in character from conditions ordinarily and generally brought about by the winter weather prevalent in the given locality.

This statement of the rule finds support in the principal decisions in this court in snow and ice cases.

To render a municipality liable for an injury caused by the presence of snow and ice in the streets, it must constitute an unusual or dangerous obstruction to travel. (*Harrington* v. *City of Buffalo*, 121 N. Y. 147, 150.) "The danger arising from the slipperiness of ice or snow lying in the streets," said RUGER, Ch. J., in the case cited, "is one which is familiar to everybody residing in our climate and which everyone is exposed to who has occasion to traverse the streets of cities and villages in the winter season." Nevertheless, the duty which the law imposes upon a municipal corporation to keep its streets in a suitable condition for public travel obligates its agents charged with that duty to exercise vigilance in the performance thereof; and this extends to the removal of dangerous and exceptional accumulations of snow and ice as well as other obstructions to travel. (*Todd* v. *City of Troy*, 61 N. Y. 506.) In the case cited a conducting pipe discharged water upon the sidewalk over which the water ran into the street gutter. This water would alternately freeze and thaw according to the temperature, and for some days before the accident there was ice upon the sidewalk extending clear across the same, but concealed by a slight covering of recently fallen snow. The city of Troy was held liable for an injury sustained by the plaintiff in slipping upon this concealed ice. In *Evans* v. *City of Utica* (69 N. Y. 166, 167) the obstruction for the existence of which the defendant was held liable consisted of snow which "had been suffered to accumulate for a month or more, and had thawed and frozen until ice had formed from four to six inches thick, with an uneven surface." In *Urquhart* v. *City of Ogdensburg*

(91 N. Y. 67) the negligence of the municipality was predicated upon an accumulation of ice upon a sloping sidewalk. In *Allison* v. *Village of Middletown* (101 N. Y. 667) the village was charged with negligence for having allowed ice formed from the wastage of a pump and the discharge from a leader on a house to accumulate and remain upon a sidewalk, and this court held that the case ought to have gone to the jury. In *Pomfrey* v. *Village of Saratoga Springs* (104 N. Y. 459, 464, 470) snow and ice had accumulated on a village sidewalk until the embankment was about three feet thick above the surface of the ground and two and a half feet thick upon the sidewalk easterly and westerly therefrom. "This snow and ice had fallen, from time to time, from the roof of a barn standing near the sidewalk, and had been there for at least two weeks." In holding that the village was liable for injuries received by the plaintiff in falling upon this accumulation, the court, speaking through EARL, J., commented upon the serious character of the responsibility cast upon cities and villages for injuries caused by slipping down upon streets and sidewalks in consequence of snow and ice. "In this climate, where during several months of the year snow falls in large quantities and ice is from time to time created, it is quite impossible, particularly in villages, at all times to keep the streets and sidewalks in a safe condition. In this village it appears that there were seventy-five miles of sidewalks, and but one superintendent having charge of all the streets and sidewalks. It is manifestly difficult under such circumstances for such a village to keep its sidewalks at all times clear of snow and ice; and the proof should be very satisfactory, showing clear neglect of duty, before liability for injuries caused by snow and ice should be imposed." The case cited was closely followed by *Taylor* v. *City of Yonkers* (105 N. Y. 202, 206), in which the court, while declaring its willingness to hold cities and villages to a reasonable performance of duty, expressly asserted that it was not willing to make them practically

insurers by founding their liability upon mere possibility. "When the streets have been wholly or partially cleaned," said FINCH, J., "it often happens that a fall of rain or the melting of adjoining snow is suddenly followed by severe cold, which covers everything with a film or layer of ice and makes the walk slippery and dangerous. This frozen surface it is practically impossible to remove until a thaw comes which remedies the evil. The municipality is not negligent for awaiting that result." To the same effect were the remarks of the court, speaking through the same judge, in *Kaveny* v. *City of Troy* (108 N. Y. 571), where the obstruction was due to ice formed from the drip of a roof; and the city was exonerated because it appeared that for more than ten days preceding the accident the mercury had been below the freezing point and it was unreasonable to expect it to remove the ice under such conditions. On the other hand, dangerous and unusual conditions for which the defendants were held responsible were found to exist in *Bishop* v. *Village of Goshen* (120 N. Y. 337), where the defendant's servants clogged a grating with snow, thus preventing water from running off and causing ice to form on a sidewalk; in *Gillrie* v. *City of Lockport* (122 N. Y. 403, 406), where a ridge of ice was formed on a sidewalk by a defective gutter; and in *Weston* v. *City of Troy* (139 N. Y. 281), where the discharge from a pipe formed a ridge of ice several inches high and two or three feet wide which was covered by light snow.

The cases which we have thus far discussed are those in which complaint was made of the presence of ice or snow upon a sidewalk. A much less stringent liability exists with reference to snow and ice in the roadway. Thus, the case of *Lichtenstein* v. *Mayor, etc., of N. Y.* (159 N. Y. 500), involved the responsibility of the city of New York, not for allowing snow and ice to accumulate upon a sidewalk, but for allowing it to accumulate in the bed of the street. The plaintiff stepped upon it there to

avoid a pool of water on a crosswalk and was injured.    A
verdict in his favor was upheld by the Appellate Division,
but this court (per O'BRIEN, J.) held that the city was not
liable, three judges dissenting.    So likewise in *Dupont* v.
*Village of Port Chester* (204 N. Y. 351) we have recently
held that the duty of a municipality to keep its sidewalks
free from snow and ice does not, in the absence of some
express provision of statute, apply to the same extent to a
crosswalk or crossing on a public street.    In that case we
quoted with approval a passage from the opinion in *Bren-
nan* v. *City of New York* (130 App. Div. 267, 268) in
which it is said, in substance, that the mere presence of
snow or ice on a sidewalk is not enough to show that a
city is negligent.    The general conditions of our variable
winter climate, which are the work of nature, cannot be
guarded against; "but if the city should negligently
suffer snow and ice to remain and accumulate in a par-
ticular place, until it became of a permanent nature, and
a dangerous obstruction to pedestrians, then it would be
liable, and this is the measure of its liability."

We think that this is precisely the condition of things
which the jury might have found to exist in the present
case.    There was no snow over on the other side of St.
Ann's avenue between One Hundred and Thirty-eighth
and One Hundred and Thirty-ninth streets, opposite the
icy sidewalk upon which the plaintiff fell.    Sidewalks in
the vicinity were all clean.    This fact shows conclusively
that a verdict for the plaintiff would not impose upon the
city a measure of duty impossible of fulfillment.    At all
events, inasmuch as all the other sidewalks in the neigh-
borhood had been cleared of snow and ice, the burden
rested upon the city to prove that it was impossible to
clean this one also, if such were the fact.

A misapprehension in the brief for the respondent
should be corrected.    The first point presented therein is
that "the exception by the plaintiff to the dismissal of
the complaint does not survive the unanimous affirmance

of the Appellate Division; " and in support of this proposition reference is made to *Dupont* v. *Village of Port-Chester* (204 N. Y. 351, 356). It is true in that case it is said toward the end of the opinion: " An exception to a non-suit or dismissal of the complaint on the ground that the evidence does not show a cause of action raises a question of law that can be reviewed in this court unless the decision of the Appellate Division is unanimous." A reference to the context shows that what was meant was an exception to a *refusal to grant* a nonsuit or dismissal of the complaint was reviewable in this court, and that the omission of these words was an inadvertence. This is made clear by the fact that in that case the motion for a nonsuit was denied, the respondent recovered a verdict, and the point made in this court was that an exception to the denial of the motion did not survive.

The judgment should be reversed and a new trial granted, with costs to abide the event.

HISCOCK, CHASE, MILLER, CARDOZO and SEABURY, JJ., concur; CUDDEBACK, J., dissents.

Judgment reversed, etc.