JOHN MITCHELL, Respondent, *v.* VILLAGE OF DANNEMORA, NEW YORK, Appellant.

Third Department, May 2, 1917.

**Municipal corporations — liability for damages for personal injuries resulting from snow and ice on sidewalks — rule of liability of larger cities in southern part of State not applicable to small municipalities in northern part of State — evidence.**

The rule of liability of large cities in the southern part of the State for damages for injuries resulting from the accumulation of snow and ice on the sidewalks cannot be applied to small municipalities in the northern part of the State during severe winter weather.

In an action against a village situated in the northern part of the State for personal injuries resulting from a fall on a sidewalk, it appeared that said walk was better kept than others in the village, but that hard snow and ice had accumulated during severe winter weather, to a depth of from two to five inches, so that the center of the walk was higher than at the edges. Evidence examined, and *held*, insufficient to establish the negligence of the defendant.

WOODWARD and COCHRANE, JJ., dissented.

APPEAL by the defendant, Village of Dannemora, New York, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Clinton on the 21st day of October, 1916, upon the verdict of a jury for $650, and also from an order entered in said clerk's office on the 26th day of October, 1916, denying defendant's motion for a new trial made upon the minutes.

*Patrick J. Tierney,* for the appellant.

*John H. Booth,* for the respondent.

KELLOGG, P. J.:

The plaintiff has recovered judgment for an injury received by falling upon a sidewalk covered with snow and ice. The defendant village is situated upon the side of a mountain, and is principally important on account of the State prison and the State hospital for the insane situated there, and the inhabitants are principally employed by the State in one of those institutions. In addition to such employees there are some storekeepers and others, but the people live and thrive on employment by the State. There are about 850 inhabitants; there is a president, two trustees, no street commissioner. The accident occurred March 16, 1916. There are about 14,000 lineal feet of cement sidewalk in the village. The State buildings are north of Cook street, the principal street of the village running east and west. Emmons street runs at right angles with it from the prison to the railroad station, and on a steep grade of about ten per cent. The sidewalks upon Emmons street were built by the State, or the convicts of the State, with cement furnished by the property owners, and the walks were shoveled by inmates of the prison under the direction of a prison official, and were shoveled after every storm. The winter had been a very severe one, with deep snow and much cold weather, and during the month of March to the time of the accident the highest temperature was thirty-nine and the lowest temperature thirteen below zero, with the thermometer at zero much of the time. During eight of the fifteen days of March, twenty-six and three-tenths inches of snow had fallen. On the westerly side of Emmons street the snow had not been removed during the winter, and was about three and one-half to five or six feet upon the sidewalk. Through the center of the street the snow had been shoveled out in the middle, making a channel for the passage of teams, with a bank of snow on either side three or four feet high. The left-hand walk, upon which the accident occurred, had been shoveled after every storm; it was a cement walk, about six feet wide, and was shoveled the width of the walk to the gutter, so that water could run

off. During a snowstorm, or if it took place in the night, before the men could shovel it in the morning, the snow became packed down by travelers, with the result that when the men came to remove the snow with iron shovels, they could not remove it all down to the cement, but there was hard snow and ice accumulated upon the walk to a depth of from two to five inches, which snow and ice had been accumulating during the winter so the center of the walk was higher than at the edges, forming a ridge, the center being two to three inches higher than at the edges of the walk. On some streets in the village the walks were not shoveled at all, and apparently this walk was the best kept walk in the village, as it furnished the principal communication between the State buildings and the railroad.

I think it is a recognized fact, in the northern part of the State, that during the winter a cement sidewalk is safer with the snow upon it than if kept clear of snow. It is also a known fact that it is difficult to prevent a ridge through the center of a cement walk, caused by the snow being packed down by travelers and the difficulty of removing the snow down to the cement. It is also a matter of common experience in the villages and the small cities in the northern part of the State, that many days during the winter pedestrians find it safer to walk in the center of the street than upon the sidewalks to avoid the icy conditions of the walk. Upon Emmons street people at times walk through the center of the street.

This little village did not guarantee the safety of its walks or indemnify the people traveling upon them, and was not responsible for the severity of the winter or the climate. I think the evidence indicates that this street was as well kept as streets in villages of its size in the same general locality. The same rule of liability cannot be applied to a small municipality in the northern part of the State, during the severe winter weather, and to large cities in the southern part of the State. We think that within the rule of *Williams* v. *City of New York* (214 N. Y. 259) and *Gaffney* v. *City of New York* (218 id. 225), and the cases cited, that negligence against the plaintiff has not been shown. " The danger arising from the slipperiness of ice or snow lying in the streets,

is one which is familiar to everybody residing in our climate and which everyone is exposed to who has occasion to traverse the streets of cities and villages in the winter season." (*Harrington* v. *City of Buffalo*, 121 N. Y. 147, 150.) Undoubtedly the walk was more or less dangerous; but the village walks in the northern part of the State are usually more or less dangerous in winter weather. We cannot say, however, that it was " unusual or exceptional; that is to say, different in character from conditions ordinarily and generally brought about by the winter weather prevalent in the given locality." (*Williams Case, supra,* 264.) This walk lay towards the sun, and at times the snow would thaw, and upon the upper portion of the walk a glare of ice was formed, and children of a larger and smaller growth, upon sleds, boards, tins and pasteboards, slid down the walk. But the icy condition did not reach the point in question. At this place the snow and ice upon the walk apparently was not formed by running water, but by walking upon the snow in a damp condition, followed by zero weather. If there was an unusual situation on Emmons street, it was caused in the upper part of the street by permitting sliding upon the walk; but it is not apparent that the condition complained of here was caused in that way.

The judgment should, therefore, be reversed as not sustained by the evidence, and a new trial granted, with costs to appellant to abide the event.

All concurred, except WOODWARD and COCHRANE, JJ., who dissented.

Judgment and order reversed on law and facts and new trial granted, with costs to appellant to abide event. The court disapproves of the finding of fact that the defendant was guilty of negligence.