JOHN K. MAZANTI, Respondent, *v.* WRIGHT'S UNDERWEAR CO., INC., Appellant.

Third Department, April 28, 1943.

*Murphy, Aldrich, Guy & Broderick* (*Morris Simon* of counsel), for appellant.

*David Rosenfeld* for respondent.

HILL, P. J. Respondent has recovered a verdict on account of injuries which he received on March 11, 1941, at about nine-thirty or ten o'clock in the morning, when he fell upon a side-walk opposite appellant's premises occupied by a manufacturing plant and office, and which extend three hundred sixty-eight feet along the easterly side of Second Avenue in Troy. The office, a flat-roofed building, is on the northerly portion of the parcel and close to the sidewalk. Westerly and in the rear is the four-story brick factory building with slanting roof, the pitch being northerly and southerly. The snow or rain on the northerly half would drain or fall when it left the roof, upon what is known as the northerly drive, or on a grass plot between the drive and the building. The buildings already described have their longest axis about ninety feet in an easterly and westerly direction. At the westerly end they are joined at nearly a right angle by other factory buildings extending some one hundred eighty feet southerly. In front of these latter buildings and bounded on the north by the office and factory building is an open grass area-way. The northerly drive, within a few feet of the most northerly buildings, is paved with Belgian blocks through which grass and weeds have grown. It extends easterly to the north and south buildings, and by an oval curve back to Second Avenue about eighty feet southerly from the office building, and is there called in this record the "middle drive." There is a third drive one hundred feet southerly from the middle drive. The respondent fixed the place of his fall near the south side of the northerly driveway where he said there was an accumulation of snow and ice due to drainage and snow falling from the roof of the factory building east of the office building. Six witnesses, employees or officials of appellant, and two not so employed, say that respondent was lying, after his injury, ten or fifteen feet southerly from the middle drive and about one hundred feet southerly from the location he fixed as the place where he fell. Seven of these witnesses were seated in the office building, looked from a window with a northerly exposure and observed respondent upon the sidewalk. One of

these, a business caller upon appellant's officials, had his street clothes on and went to respondent's assistance, accompanied by a milkman whom he met as he was leaving the building. The court charged the jury that there could be no recovery if the fall occurred at the point fixed by these eight witnesses. The issue of fact has been resolved against appellant, but the finding of the jury was against the weight of evidence.

The respondent describes his fall: " I slipped on the sidewalk and then I started to fall, and then I put my right foot hard against the ground like that (ind.). If I am allowed to demonstrate it, like that (ind.), and then right at once I heard a crack exactly like you break a limb or branch of a tree. * * * Well, I see of course that there was snow on the ground. * * * I could feel that the ice underneath the snow, that it was bumpy. * * * I seen it when it happened. I pushed some of the snow away with my hand. * * * Well, after I fell I couldn't help but look around, and I noticed that the driveway, it was filled with ice, and I also noticed that there was some tracks from a truck going up there, and, furthermore, I couldn't help but notice that there was icicles hanging down from the roof, and right underneath, a little ways out, there was some snow laying there * * * about a few inches out from the building. * * * That snow, it was about two feet high." He also marked a photograph indicating that he fell opposite the northerly drive. A witness, an employer of respondent, testified concerning the condition of the walk on March 7th, previous to the injury. She was in this neighborhood and walked along the sidewalk opposite appellant's property, and she says that when she reached this walk " I had to walk out in the road to avoid the ice that was there on the sidewalk, lumpy hard ice." Further describing the situation she says that there was ice " right by the office building. The driveway was all ice, too. Right by that office there is a driveway. * * * I couldn't just say just how far, but quite a ways back in [along the northerly drive]. It was all over the sidewalk."

The first assistant at the United States Weather Bureau in Albany testified as to weather conditions. There was an entry in his records as of March 8th, " Walks and streets slippery from wet packed snow." There was a snow fall from the evening of March 9th, to a little after three o'clock on the morning of the 10th, and again beginning about seven o'clock that morning for an hour. At eight o'clock in the morning of the 11th snow again fell. There were from five to eight inches of snow on the ground on the morning of the 10th. On the 11th up to the time of the

accident the temperature varied from twelve to about twenty degrees above zero. On the 10th the temperature in the day varied from thirty-three to thirty-five degrees, but had fallen about midnight to twenty-one. Appellant's master mechanic was a witness. It was his duty to go to the plant in advance of the three hundred fifty employees who arrived at about eight o'clock. On the morning of the 11th he says that he observed the sidewalk and there was " a little fine, thin ice on the sidewalk, and right away we got busy and we put some sand on it, and then it started to snow."

*Williams* v. *City of New York* (214 N. Y. 259) is the leading snow and ice case in this State, particularly in actions against a municipality. Much of it, however, applies equally in cases against property owners. Liability exists only when the condition is dangerous, unusual or exceptional, " that is to say different in character from conditions ordinarily and generally brought about by the winter weather prevalent in the given locality. * * * It must constitute an unusual or dangerous obstruction to travel." (*Williams* v. *City of New York, supra,* 263, 264.) Injuries received because of the inhibited conditions arising from ice formed by drip from a roof are actionable. In *Feinblum* v. *City of New York* (252 App. Div. 330, affd. 277 N. Y. 708) a judgment against a property owner was affirmed. There water from the eaves of two greenhouses, falling into a narrow alley, ran across the sidewalk.

The instant case is borderline. The contour of the land, the type of paving used in the north driveway, would not indicate that under normal winter conditions water would flow across the sidewalk. The amount of snow which had fallen and the almost continuous sub-freezing temperature for three or four days prior to respondent's injury, had produced a general icy and slippery condition on all sidewalks. There is uncontroverted evidence by one of appellant's employees that he had sanded the sidewalk before eight o'clock that morning, not only for the safety of the general public, but particularly for the three hundred fifty employees of the mill. Respondent says that the ice underneath the snow was " bumpy " and that the drive was " filled with ice " and there " was some tracks from a truck going up there." This description hardly measures up to the dangerous and unusual requirement of the authorities, or at least a jury should determine whether or not it does in a trial wherein there has been no prejudicial error.

A witness, probably inadvertently, brought in the issue of insurance. Following the denial of a motion by appellant for

the withdrawal of a juror and a new trial, the court discussed the subject of insurance at considerable length. The jury was instructed to disregard the statement made by the witness, and the court continued: " Today people are insured, and we know they are insured, and they ought to be insured, but that ought not to have the least influence upon your judgment in deciding the facts as brought out by the evidence here. Don't allow that to have any influence on you whatever. Decide the case as if there were no insurance company, person against person, or person against corporation. Decide it honestly upon the facts. Now, the fact that they mention there is insurance, don't let that interfere with your judgment. As I have said, everybody ought to be insured. If you had an accident or I did, we would be mighty glad if the other fellow was insured. So don't allow it to have any influence on your minds whatever." This statement left no doubt that appellant was insured. This type of question comes before the courts frequently, and recently has quite generally been disregarded. Unless under the authorities it is permissible for the jury to be told that a defendant is insured against paying damages that may be awarded, and that the obtaining of insurance is commendable, the frank discussion by the court was error. While possibly the frankness of the Trial Justice would be the wise way to treat the insurance question in this class of cases, the court of last resort has not so announced, and other appellate courts reverse when the subject of insurance becomes too prominent. (*Simpson* v. *Foundation Co.*, 201 N. Y. 479; *Havern* v. *Hoffmann*, 252 App. Div. 486; *Burgess* v. *Essler*, 261 App. Div. 1042.)

The judgment should be reversed for the error of law, and on the facts, and a new trial granted.

CRAPSER, BLISS and SCHENCK, JJ., concur; HEFFERNAN, J., dissents, and votes to affirm.

Judgment reversed on the law and facts, and a new trial granted, with costs to abide the event.