# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**865**

**CA 12-00529**

PRESENT: SCUDDER, P.J., SMITH, CENTRA, FAHEY, AND PERADOTTO, JJ.

---

ASHLEY FERGUSON, PLAINTIFF-APPELLANT,

V                                                    MEMORANDUM AND ORDER

ROCHESTER CITY SCHOOL DISTRICT,
DEFENDANT-RESPONDENT.

---

ELLIOTT, STERN & CALABRESE, LLP, ROCHESTER (DAVID S. STERN OF
COUNSEL), FOR PLAINTIFF-APPELLANT.

CHARLES G. JOHNSON, ROCHESTER (MICHAEL E. DAVIS OF COUNSEL), FOR
DEFENDANT-RESPONDENT.

---

Appeal from a judgment of the Supreme Court, Monroe County (John
J. Ark, J.), entered June 13, 2011 in a personal injury action. The
judgment, upon a jury verdict in favor of defendant, awarded costs.

It is hereby ORDERED that the judgment so appealed from is
reversed on the law without costs, the posttrial motion is granted,
the verdict is set aside, the complaint is reinstated and a new trial
is granted.

Memorandum: Plaintiff commenced this action seeking damages for
injuries she sustained when she slipped and fell on a snow- and ice-
covered walkway on school premises owned by defendant. After trial,
the jury returned a verdict finding that defendant was not negligent.
We agree with plaintiff that Supreme Court erred in denying her
posttrial motion to set aside the verdict and for a new trial inasmuch
as the verdict is contrary to the weight of the evidence (*see* CPLR
4404 [a]). Although plaintiff appeals from the order denying her
posttrial motion and not the subsequently-entered judgment, we
nevertheless exercise our discretion to treat the notice of appeal as
valid and deem the appeal as taken from the judgment (*see* CPLR 5520
[c]; *Hughes v Nussbaumer, Clarke & Velzy*, 140 AD2d 988, 988).

With respect to the merits, we conclude that "the evidence so
preponderate[d] in favor of the [plaintiff] that [the verdict] could
not have been reached on any fair interpretation of the evidence"
(*Lolik v Big V Supermarkets*, 86 NY2d 744, 746 [internal quotation
marks omitted]; *see Higgins v Armored Motor Serv. of Am., Inc.*, 13
AD3d 1087, 1088). It is well established that "[a] landowner must act
as a reasonable [person] in maintaining his [or her] property in a
reasonably safe condition in view of all the circumstances, including
the likelihood of injury to others, the seriousness of the injury, and

the burden of avoiding the risk" (*Basso v Miller*, 40 NY2d 233, 241 [internal quotation marks omitted]; *see Witherspoon v Columbia Univ.*, 7 AD3d 702, 702-703). "Once a [landowner] has actual or constructive notice of a dangerous condition, the [landowner] has a reasonable time to undertake remedial actions that are reasonable and appropriate under all of the circumstances" (*Friedman v Gannett Satellite Info. Network*, 302 AD2d 491, 491-492; *see Sartin v Amerada Hess Corp.*, 256 AD2d 857, 857).

Here, as conceded by the dissent, it is undisputed that the compacted snow and ice remaining on the walkway at the time of plaintiff's accident constituted a dangerous condition and that defendant had actual notice of the dangerous condition. Indeed, defendant's head custodian in charge of snow removal repeatedly testified that the walkway at issue, which was regularly used by students and faculty entering and exiting the school, was "very icy" on the morning of the accident. The accident occurred sometime between 7:00 a.m. and 7:30 a.m., when classes began. The head custodian and another custodial employee testified that, prior to that time, they dragged snow from the walkway using the back blade of a tractor and spread salt on the walkway using a snow blower with a salt spreader attachment. Nevertheless, the walkway was still covered in ice and snow and thus was slippery at the time of plaintiff's fall. The head custodian confirmed that, when he responded to the accident site after learning of plaintiff's fall, "ice covered the entire [walkway]" and that he found plaintiff "laying on top of ice." Plaintiff similarly testified that the walkway was "covered with ice and snow" and that she could not see the pavement. Plaintiff described the ice as hard, thick and rough. Plaintiff's mother, who visited the school the day after the accident, described the surface of the snow- and ice-covered walkway as "white and hard". She confirmed that it looked as though the snow had melted and had frozen again, resulting in "hard ice." Plaintiff's mother took photographs of the area where plaintiff fell, which depict compacted snow and ice covering the majority of the walkway with spots of bare pavement showing through and snow piles lining the walkway. Significantly, the head custodian testified that the photographs did not accurately depict the conditions that existed on the date of plaintiff's accident because the photographs showed "dry spots . . . where [he] believe[d] the salt had penetrated," and those dry spots had not been there when plaintiff fell.

We conclude that the trial evidence establishes that defendant's efforts to ameliorate the dangerous condition were not reasonable and appropriate under the circumstances and thus that defendant was negligent (*see generally McGowan v State of New York*, 79 AD3d 984, 985-987; *Chase v OHM, LLC*, 75 AD3d 1031, 1033). Notably, defendant did not contend at trial, nor does it contend on appeal, that there was a storm in progress or that it lacked sufficient time to remedy the dangerous condition of the walkway before plaintiff fell (*see generally Salvanti v Sunset Indus. Park Assoc.*, 27 AD3d 546, 546; *Lyons v Cold Brook Cr. Realty Corp.*, 268 AD2d 659, 659). Rather, defendant contends, in essence, that it fulfilled its duty by plowing and salting on the morning of the accident, that it had no obligation

to remove any of the remaining snow or ice and that, in any event, it was impossible to remove any of the remaining snow or ice. In support of that position, the head custodian testified that defendant had no written procedures or usual practice for removing ice because "that's just part of mother nature" and that the custodial employees "don't remove the ice, [they] just spread the salt." He admitted that the back blade of the tractor is not effective in removing accumulated ice from the walkways and that defendant owned no other tools or machines to be used for that purpose. Thus, where there is a thaw followed by freezing temperatures resulting in hardened snow, defendant's employees simply drag snow from the walkways using the tractor's back blade and then "spread as much salt as possible to get better traction on the surface of the sidewalks leading to and from the school." With respect to the date of the accident, the head custodian testified that it was "very, very cold that morning" and that "*even if [defendant] did throw as much salt as possible [on the walkway]*, it just didn't penetrate the ice[,] . . . [i]t was only . . . good for traction" (emphasis added).

Defendant's contentions that it was "impossible" to remedy the dangerous condition of the walkway and that it took adequate measures to remove the snow and ice were refuted by the undisputed testimony of plaintiff's expert meteorologist and the certified weather records admitted in evidence. Both the meteorologist and the head custodian testified that salt becomes ineffective at around 10 degrees. In the two days prior to the date of the accident, however, area temperatures ranged from a low of 22 degrees to a high of 39 degrees, which the meteorologist testified were "well within the range for salting to be effective in melting snow and ice". The temperature at 7:00 a.m. on the date of the accident was 25 degrees. Additionally, the evidence at trial establishes that defendant allowed the snow and ice to build up on the walkway over several days. Plaintiff's meteorologist testified that there was no sleet or rainfall in the area in the four days preceding the date of the accident and that the only significant snowfall occurred four days prior to the date of the accident, when 2.9 inches fell. That storm occurred on the Saturday before the accident occurred, and the head custodian admitted that defendant undertook no snow removal efforts over that weekend. Plaintiff testified that the condition of the walkway on the Monday and Tuesday prior to her fall was "pretty much the same" as on the Wednesday when the accident occurred, i.e., that the walkway was covered in hard packed snow and ice.

Although defendant and the dissent cite several Third Department cases for the proposition that the failure to remove *all* snow and ice from a surface does not constitute negligence (*see Cardinale v Watervliet Hous. Auth.*, 302 AD2d 666, 666-667; *Gentile v Rotterdam Sq.*, 226 AD2d 973, 974), those cases involve situations where the plaintiff fell on scattered patches or a thin layer of snow or ice (*see Cardinale*, 302 AD2d at 666-667; *Gentile*, 226 AD2d at 974). Here, by contrast, plaintiff fell on a snow- and ice-covered walkway under circumstances in which defendant had ample opportunity to remedy the dangerous condition, and defendant's remedial efforts were plainly insufficient to render the walkway reasonably safe (*see generally*

*McGowan*, 79 AD3d at 986-987; *Priester v City of New York*, 276 AD2d 766, 766-767).

The dissent contends that the meteorologist's testimony is inconsistent and, at times, directly contradicts the documentary exhibits concerning a lake effect snow band in the greater Rochester area on the morning of plaintiff's accident. We disagree. The meteorologist consistently testified that the Doppler imagery depicted a band of light-to-moderate lake effect snow across the City of Rochester beginning at approximately 5:30 a.m. the morning of the accident; that the snow band lasted approximately 30 to 45 minutes and resulted in a total snow accumulation of less than one inch in the city; and that the heaviest snowfall from the snow band was focused north of route 104, while the school is south of that roadway. Inasmuch as the meteorologist was the only witness qualified to interpret the documentary exhibits relating to the weather conditions on the date of the accident, there is no basis to conclude that his testimony contradicts those exhibits.

Contrary to the further contention of the dissent, the evidence establishes that the icy condition of the walkway did not result from the weather conditions that occurred close in time to the accident. The meteorologist testified without contradiction that the "fluffy," "dry" flurries of lake effect snow that fell in the Rochester area in the hours leading up to the accident could not have caused the compacted snow and ice depicted in plaintiff's photographs and testified to by plaintiff. Rather, the meteorologist testified that the condition of the walkway appeared to have been created by the melting and refreezing of earlier snow accumulation (*see generally Bojovic v Lydig Bejing Kitchen, Inc.*, 91 AD3d 517, 518; *Sheldon v Henderson & Johnson Co., Inc.*, 75 AD3d 1155, 1156; *Ferrer v City of New York*, 49 AD3d 396, 397). Indeed, the head custodian testified that, even though defendant removed snow from and applied salt to the walkway shortly before plaintiff's accident, "large areas of ice" remained due to the accumulation of snow and ice in the days leading up to plaintiff's accident.

Moreover, we note that none of defendant's employees testified at trial that it was snowing at the school on the morning of the accident. Instead, the head custodian testified that he "believe[d]" that there was "heavy rain" on the Monday and Tuesday prior to the accident "because that's the only way that the ice would have frozen up that hard where we [were not] able to remove it, even spreading the salt," and that there was freezing rain on the morning of the accident. Defendant's other custodial employee testified that he "thought" that it had rained the day or week prior to the accident. The meteorologist unequivocally testified, however, that it did not rain in the five days up to and including the day of the accident. According to the meteorologist, there were no official reports of rainfall and the area weather conditions were not conducive to rain. Thus, the testimony of defendant's employees regarding the rainy conditions in the days preceding and on the day of the accident are not credible as a matter of law (*see Dorazio v Delbene*, 37 AD3d 645, 646).

In light of our determination, we do not address plaintiff's contention that reversal is required based on the court's charge to the jury concerning the applicable standard of care.

We therefore reverse the judgment, grant the posttrial motion, set aside the verdict, reinstate the complaint and grant a new trial (*see Canazzi v CSX Transp., Inc.* [appeal No. 2], 61 AD3d 1347, 1348; *Pellegrino v Youll*, 37 AD3d 1064, 1064).

All concur except SCUDDER, P.J., and SMITH, J., who dissent and vote to affirm in the following Memorandum: We respectfully disagree with the majority and conclude that Supreme Court properly denied plaintiff's motion to set aside the verdict pursuant to CPLR 4404 (a). It is well established that "[a] motion to set aside a jury verdict of no cause of action should not be granted unless the preponderance of the evidence in favor of the moving party is so great that the verdict could not have been reached upon any fair interpretation of the evidence" (*Dannick v County of Onondaga*, 191 AD2d 963, 964; *see generally Lolik v Big V Supermarkets*, 86 NY2d 744, 746). Here, there was no such preponderance of the evidence in favor of plaintiff.

"In general, to impose liability for an injury proximately caused by a dangerous condition created by weather . . ., a defendant must either have created the dangerous condition, or had actual or constructive notice of the condition, and a reasonable time to undertake remedial actions . . . Once a defendant has actual or constructive notice of a dangerous condition, the defendant has a reasonable time to undertake remedial actions that are reasonable and appropriate under *all* of the circumstances" (*Friedman v Gannett Satellite Info. Network*, 302 AD2d 491, 491-492 [emphasis added]*; see Campanella v 1955 Corp.*, 300 AD2d 427, 427). Where, as here, the dangerous condition consists of ice or snow, the "standard must be applied with an awareness of the realities of the problems caused by winter weather" (*Marcellus v Littauer Hosp. Assn.*, 145 AD2d 680, 681; *see Fusco v Stewart's Ice Cream Co.*, 203 AD2d 667, 668; *see generally Williams v City of New York*, 214 NY 259, 263-264). The reason for such a rule is simple—" 'snow and ice conditions are unpredictable, natural hazards against which no one can insure and which in their nature cannot immediately be alleviated' " (*Hilsman v Sarwil Assoc., L.P.*, 13 AD3d 692, 693). Furthermore, " '[t]he danger arising from the slipperiness of ice or snow . . . is one which is familiar to everybody residing in our climate and which everyone is exposed to who has occasion to traverse the streets of cities and villages in the winter season' " (*Williams*, 214 NY at 264, quoting *Harrington v City of Buffalo*, 121 NY 147, 150). Based on the realities of winter weather, it has become well settled that "the mere failure to remove *all* snow and ice from a sidewalk or parking lot does not constitute negligence" (*Gentile v Rotterdam Sq.*, 226 AD2d 973, 974; *see Wheeler v Grande'Vie Senior Living Community*, 31 AD3d 992, 992-993; *Cardinale v Watervliet Hous. Auth.*, 302 AD2d 666, 667; *Klein v Chase Manhattan Bank*, 290 AD2d 420, 420; *see generally Spicehandler v City of New York*, 279 App Div 755, 756, *affd* 303 NY 946).

Here, there is no dispute that the snow and ice remaining on the walkway on which plaintiff fell constituted a dangerous condition and that defendant had actual notice of that dangerous condition. "The critical issue to be resolved is whether, under the prevailing conditions, [defendant] fulfilled its duty to take appropriate measures to keep the [walkway] safe . . . [I]t is a well-settled tort principle that appropriate measures are those which under the circumstances are reasonable . . . Ascertaining a standard of reasonableness must be undertaken with an awareness of the realities . . . caused by . . . weather" (*Pappo v State of New York*, 233 AD2d 379, 379-380 [internal quotation marks omitted]; *see Goldman v State of New York*, 158 AD2d 845, 845, *appeal dismissed* 76 NY2d 764; *see generally Basso v Miller*, 40 NY2d 233, 241-242). In determining whether defendant's actions were reasonable, the relevant inquiry is whether "it would be unreasonable to expect that the ice and hard-packed snow would have been completely eradicated" by defendant before plaintiff's accident (*Delveccio v State of New York*, 14 Misc 3d 1230[A], 2006 NY Slip Op 52569[U], * 3).

While plaintiff attempted to establish that there was no significant snowfall occurring on the morning of her accident, the majority ignores the fact that defendant presented proof demonstrating that the icy walkway resulted from the weather conditions that occurred close in time to the accident. Plaintiff presented testimony from a meteorologist, who relied heavily on reports from the National Oceanic Atmospheric Administration detailing the weather conditions at the airport, which was located six miles southwest of defendant's property. The meteorologist, however, admitted that the weather in other parts of Monroe County could be "significantly different" from the weather at the airport. Plaintiff's meteorologist had no specific records concerning the snowfall at defendant's property, and documentary exhibits established that, on the morning of plaintiff's accident, there was a band of "lake effect snow" in an area north of the airport that encompassed defendant's property. Moreover, there were several weather-related advisories issued that morning regarding the snow band and alerting travelers of "moderate to heavy snow," "snow-covered, slippery roads," and "hazardous" driving conditions. The majority states that "the snow band was focused north of Route 104 while the school is south of that roadway," but that ignores testimony and documentary exhibits establishing that the heaviest area of snowfall in that snow band "dropped below [Route 104]" into the area one mile south of Route 104, which encompassed defendant's property. We thus conclude that the jury could have discounted plaintiff's evidence concerning the weather conditions inasmuch as the meteorologist's testimony was inherently inconsistent and was, at times, directly contradicted by the documentary exhibits admitted in evidence at the trial and the testimony of other witnesses establishing that there was a significant snow band encompassing the area of defendant's property on the morning of plaintiff's fall.

We further conclude that defendant presented evidence demonstrating that it fulfilled its duty to take appropriate measures to keep the walkway safe. At the time of plaintiff's accident, defendant's employees were using a "proven snow-removal plan . . .

implemented immediately following the inclement weather" (*Goldman*, 158 AD2d at 846; *cf. McGowan v State of New York*, 79 AD3d 984, 986).  The testimony at trial established that defendant had "a total of maybe four or five" employees working on maintaining the walkways the morning of plaintiff's accident and that at least two of those employees had been working on removing the snow and salting the walkways for over an hour before plaintiff's fall.  Defendant's employees used a tractor and salt spreader but, even after "several trips going back and forth," ice remained on the walkways.  Moreover, defendant's head custodian testified that it was not possible to shovel and scrape all of the walkways down to the bare surface and that, even though the area where plaintiff fell had been salted "quite a bit," it remained slippery due to the ice.  Taking into consideration the circumstances with which defendant was presented, we conclude that defendant's evidence, at the very least, raised a question of fact whether defendant's "remedial measures were adequate" (*Diaz v West 197*$^{th}$ *St. Realty Corp.*, 269 AD2d 327, 327; *see Polgar v Syracuse Univ.*, 255 AD2d 780, 780-781).

Although plaintiff presented proof suggesting that defendant's efforts were inadequate, we cannot agree with the majority that the jury verdict resolving those issues of fact in favor of defendant is "palpably irrational or wrong" (*Dannick*, 191 AD2d at 964; *see Stern v Ofori-Okai*, 246 AD2d 807, 808).  In our view, the majority "carr[ies] the rule of responsibility beyond all reasonable limits" (*Mead v Nassau Community Coll.*, 126 Misc 2d 823, 824; *see generally Williams*, 214 NY at 263-264).

Inasmuch as we conclude that the court properly denied plaintiff's motion to set aside the verdict, we must address plaintiff's remaining contention that reversal is required based on the court's charge to the jury concerning the applicable standard of care.  In our view, plaintiff is precluded from challenging the court's charge.  In its initial charge to the jury, the court instructed the jury regarding the standard of care applicable to municipalities.  After plaintiff objected to the initial charge, the court admitted its error and gave the jury a curative instruction.  The court first re-read the incorrect charge to the jury and then juxtaposed it to the correct charge, which the court then read in full.  The court specifically informed the jury that the erroneous charge related to municipalities and that it was not applicable to defendant.  Because plaintiff's attorney thereafter expressed his satisfaction with the curative instruction and neither moved for a mistrial nor objected to the curative instruction, plaintiff is "precluded from raising the effect of the curative instruction on appeal" (*Marek v DePoalo & Son Bldg. Masonry*, 240 AD2d 1007, 1009; *see Dennis v Capital Dist. Transp. Auth.*, 274 AD2d 802, 803; *see also MacNamara-Carroll, Inc. v Delaney*, 244 AD2d 817, 818-819, *lv dismissed in part and denied in part* 91 NY2d 1001; *but see Trump v Associated Transp., Inc.*, 275 App Div 982, 982).  "While this Court is empowered to grant a new trial in the interest of justice where demonstrated errors in a jury instruction are fundamental . . . here, we find no evidence of error 'so significant that the jury was prevented from

fairly considering the issues at trial' " (*Pyptiuk v Kramer*, 295 AD2d 768, 771; *see Antokol & Coffin v Myers*, 30 AD3d 843, 847).  The curative instruction was "given in such explicit terms as to preclude the inference that the jury might have been influenced by the [initial] error" (*Dennis*, 274 AD2d at 803).

Entered:  October 5, 2012                    Frances E. Cafarell
                                             Clerk of the Court