Scudder, P.J., and Smith, J.
(dissenting). We respectfully disagree with the majority and conclude that Supreme Court properly denied plaintiffs motion to set aside the verdict pursuant to CFLR 4404 (a). It is well established that “[a] motion to set aside a jury verdict of no cause of action should not be granted unless the preponderance of the evidence in favor of the moving party is so great that the verdict could not have been reached upon any fair interpretation of the evidence” (Dannick v County of Onondaga, 191 AD2d 963, 964 [1993]; see generally Lolik v Big V Supermarkets, 86 NY2d 744, 746 [1995]). Here, there was no such preponderance of the evidence in favor of plaintiff.
“In general, to impose liability for an injury proximately caused by a dangerous condition created by weather . . . , a defendant must either have created the dangerous condition, or had actual or constructive notice of the condition, and a reasonable time to undertake remedial actions . . . Once a defendant has actual or constructive notice of a dangerous condition, the defendant has a reasonable time to undertake remedial actions that are reasonable and appropriate under all of the circumstances” (Friedman v Gannett Satellite Info. Network, 302 AD2d 491, 491-492 [2003] [emphasis added]; see Campanella v 1955 Corp., 300 AD2d 427, 427 [2002]). Where, as here, the dangerous condition consists of ice or snow, the “standard must be applied with an awareness of the realities of the problems caused by winter weather” (Marcellus v Littauer Hosp. Assn., 145 AD2d 680, 681 [1988]; see Fusco v Stewart’s Ice Cream Co., 203 AD2d 667, 668 [1994]; see generally Williams v City of New York, 214 NY 259, 263-264 [1915]). The reason for such a rule is simple— “ ‘snow and ice conditions are unpredictable, natural hazards against which no one can insure and which in their nature cannot immediately be alleviated’ ” (Hilsman v Sarwil Assoc., L.P., 13 AD3d 692, 693 [2004]). Furthermore, “ ‘[t]he danger arising from the slipperiness of ice or snow ... is one which is familiar to everybody residing in our climate and which everyone is ex *1190 posed to who has occasion to traverse the streets of cities and villages in the winter season’ ” (Williams, 214 NY at 264, quoting City of Buffalo v Harrington, 121 NY 147, 150 [1890]). Based on the realities of winter weather, it has become well settled that “the mere failure to remove all snow and ice from a sidewalk or parking lot does not constitute negligence” (Gentile v Rotterdam Sq., 226 AD2d 973, 974 [1996]; see Wheeler v Grande’Vie Senior Living Community, 31 AD3d 992, 992-993 [2006]; Cardinale v Watervliet Hous. Auth., 302 AD2d 666, 667 [2003]; Klein v Chase Manhattan Bank, 290 AD2d 420, 420 [2002]; see generally Spicehandler v City of New York, 279 App Div 755, 756 [1951], affd 303 NY 946 [1952]).
Here, there is no dispute that the snow and ice remaining on the walkway on which plaintiff fell constituted a dangerous condition and that defendant had actual notice of that dangerous condition. “The critical issue to be resolved is whether, under the prevailing conditions, [defendant] fulfilled its duty to take appropriate measures to keep the [walkway] safe . . . [I]t is a well-settled tort principle that appropriate measures are those which under the circumstances are reasonable . . . Ascertaining a standard of reasonableness must be undertaken with an awareness of the realities . . . caused by . . . weather” (Pappo v State of New York, 233 AD2d 379, 379-380 [1996] [internal quotation marks omitted]; see Goldman v State of New York, 158 AD2d 845, 845 [1990], appeal dismissed 76 NY2d 764 [1990]; see generally Basso v Miller, 40 NY2d 233, 241-242 [1976]). In determining whether defendant’s actions were reasonable, the relevant inquiry is whether “it would be unreasonable to expect that the ice and hard-packed snow would have been completely eradicated” by defendant before plaintiffs accident (Delveccio v State of New York, 14 Misc 3d 1230[A], 2006 NY Slip Op 52569[U],* 3 [2006]).
While plaintiff attempted to establish that there was no significant snowfall occurring on the morning of her accident, the majority ignores the fact that defendant presented proof demonstrating that the icy walkway resulted from the weather conditions that occurred close in time to the accident. Plaintiff presented testimony from a meteorologist, who relied heavily on reports from the National Oceanic Atmospheric Administration detailing the weather conditions at the airport, which was located six miles southwest of defendant’s property. The meteorologist, however, admitted that the weather in other parts of Monroe County could be “significantly different” from the weather at the airport. Plaintiffs meteorologist had no specific records concerning the snowfall at defendant’s property, and *1191 documentary exhibits established that, on the morning of plaintiffs accident, there was a band of “lake effect snow” in an area north of the airport that encompassed defendant’s property. Moreover, there were severed weather-related advisories issued that morning regarding the snow band and alerting travelers of “moderate to heavy snow,” “snow-covered, slippery roads,” and “hazardous” driving conditions. The majority states that “the snow band was focused north of Route 104 while the school is south of that roadway,” but that ignores testimony and documentary exhibits establishing that the heaviest area of snowfall in that snow band “dropped below [Route 104]” into the area one mile south of Route 104, which encompassed defendant’s property. We thus conclude that the jury could have discounted plaintiffs evidence concerning the weather conditions inasmuch as the meteorologist’s testimony was inherently inconsistent and was, at times, directly contradicted by the documentary exhibits admitted in evidence at the trial and the testimony of other witnesses establishing that there was a significant snow band encompassing the area of defendant’s property on the morning of plaintiffs fall.
We further conclude that defendant presented evidence demonstrating that it fulfilled its duty to take appropriate measures to keep the walkway safe. At the time of plaintiffs accident, defendant’s employees were using a “proven snow-removal plan . . . implemented immediately following the inclement weather” (Goldman, 158 AD2d at 846; cf. McGowan v State of New York, 79 AD3d 984, 986 [2010]). The testimony at trial established that defendant had “a total of maybe four or five” employees working on maintaining the walkways the morning of plaintiff s accident and that at least two of those employees had been working on removing the snow and salting the walkways for over an hour before plaintiffs fall. Defendant’s employees used a tractor and salt spreader but, even after “several trips going back and forth,” ice remained on the walkways. Moreover, defendant’s head custodian testified that it was not possible to shovel and scrape all of the walkways down to the bare surface and that, even though the area where plaintiff fell had been salted “quite a bit,” it remained slippery due to the ice. Taking into consideration the circumstances with which defendant was presented, we conclude that defendant’s evidence, at the very least, raised a question of fact whether defendant’s “remedial measures were adequate” (Diaz v West 197th St. Realty Corp., 269 AD2d 327, 327 [2000]; see Polgar v Syracuse Univ., 255 AD2d 780, 780-781 [1998]).
Although plaintiff presented proof suggesting that defend *1192 ant’s efforts were inadequate, we cannot agree with the majority that the jury verdict resolving those issues of fact in favor of defendant is “palpably irrational or wrong” (Dannick, 191 AD2d at 964; see Stern v Ofori-Okai, 246 AD2d 807, 808 [1998]). In our view, the majority “carr[ies] the rule of responsibility beyond all reasonable limits” (Mead v Nassau Community Coll., 126 Misc 2d 823, 824 [1985]; see generally Williams, 214 NY at 263-264).
Inasmuch as we conclude that the court properly denied plaintiff’s motion to set aside the verdict, we must address plaintiffs remaining contention that reversal is required based on the court’s charge to the jury concerning the applicable standard of care. In our view, plaintiff is precluded from challenging the court’s charge. In its initial charge to the jury, the court instructed the jury regarding the standard of care applicable to municipalities. After plaintiff objected to the initial charge, the court admitted its error and gave the jury a curative instruction. The court first re-read the incorrect charge to the jury and then juxtaposed it to the correct charge, which the court then read in full. The court specifically informed the jury that the erroneous charge related to municipalities and that it was not applicable to defendant. Because plaintiff’s attorney thereafter expressed his satisfaction with the curative instruction and neither moved for a mistrial nor objected to the curative instruction, plaintiff is “precluded from raising the effect of the curative instruction on appeal” (Marek v DePoalo & Son Bldg. Masonry, 240 AD2d 1007, 1009 [1997]; see Dennis v Capital Dist. Transp. Auth., 274 AD2d 802, 803 [2000]; see also MacNamara-Carroll, Inc. v Delaney, 244 AD2d 817, 818-819 [1997], lv dismissed in part and denied in part 91 NY2d 1001 [1998]; but see Trump v Associated Transp., Inc., 275 App Div 982, 982 [1949]). “While this Court is empowered to grant a new trial in the interest of justice where demonstrated errors in a jury instruction are fundamental . . . here, we find no evidence of error ‘so significant that the jury was prevented from fairly considering the issues at trial’ ” (Pyptiuk v Kramer, 295 AD2d 768, 771 [2002]; see Antokol & Coffin v Myers, 30 AD3d 843, 847 [2006]). The curative instruction was “given in such explicit terms as to preclude the inference that the jury might have been influenced by the [initial] error” (Dennis, 274 AD2d at 803). Present — Scudder, P.J., Smith, Centra, Fahey and Peradotto, JJ.